797 So.2d 387 (2001)
Karen Elissa Pearson GRAY, Appellant
v.
Doyle Gene PEARSON, Appellee.
No. 2000-CA-01248-COA.
Court of Appeals of Mississippi.
October 9, 2001.
*389 Bobby T. Vance, Batesville, Attorney for Appellant.
Omar D. Craig, Oxford, Attorney for Appellee.
BEFORE McMILLIN, C.J., THOMAS, and CHANDLER, JJ.
CHANDLER, J., for the Court:
¶ 1. Karen Gray appeals a judgment on her former husband's petition to modify child support and her counter petition for contempt. We affirm on all issues except the trial court's order which authorized a deposit of child support funds into the chancery court registry. We remand on that issue for dissemination of those funds in accordance with this ruling.

FACTS
¶ 2. Two children, Benji and Michael Pearson, were born during the marital union of Doyle and Karen Pearson. Michael was born with Down's Syndrome. Karen and Doyle ultimately divorced. Benji who was twelve years of age at the time of the divorce and Michael who was six remained in their mother's custody. The court ordered Doyle to pay child support in an amount which was later modified to $800 per month. The court also ordered Doyle to pay for Benji's college education.
¶ 3. Benji was enrolled in college on March 25, 1996, when he became twenty-one years of age. Doyle, believing that he was no longer obligated to pay for Benji's college education because Benji attained the age of majority, refused to pay for the 1996 spring semester. Doyle continued to pay the $800 per month child support for three months after Benji's twenty-first birthday. Then, on advice of his attorney, Doyle reduced the amount of his child support payments to $400 per month. He paid no child support from February 2000 to June 2000, during which time he petitioned the court for modification of child support.
¶ 4. From January 1999 to March 1999, Michael lived in a group home. He returned to live at the group home in September 1999 and continued to reside there at the time of trial which was May 31, 2000. While living at the group home, Michael spent weekends with Karen. Karen continued to maintain Michael on her medical insurance policy and continued to purchase Michael's clothes. Michael earned a small stipend for working in a workshop setting and he received approximately $200 per month in social security *390 benefits. One half of Michael's earnings and all of his social security proceeds were paid to the Mississippi Department of Mental Health (MDMH) for his care in the group home. Each month, Karen paid $322 of the $400 in child support that she received from Doyle to the MDMH for Michael's care. MDMH agreed that Karen should keep $88 of the child support money to offset Michael's expenses while he was in her care on the weekends.
¶ 5. In response to Doyle's modification petition, Karen counter-petitioned, alleging that Doyle was in contempt of court for failure to pay child support, failure to pay Benji's college expenses, and failure to comply with a term of the divorce decree which required Doyle to provide upkeep for a gun collection he was holding for his sons.
¶ 6. After trial, the chancellor ruled that Doyle was not obligated to continue paying child support for Benji. He reduced the amount of child support from $800 per month to $600 per month and made this ruling retroactive to the date of Benji's twenty-first birthday. The chancellor found that Doyle was in contempt for unilaterally reducing his child support payments to $400. Because Doyle was acting on advice of counsel, however, the chancellor held that the contempt was not wilful.
¶ 7. The chancellor ordered Doyle to reimburse Karen $700 for Benji's college expenses for the 1996 spring semester. Although Karen testified that this amount was $1,500, based on the evidence before this Court, the chancellor correctly calculated the amount as $700.
¶ 8. The chancellor ruled that Doyle was in arrears on his child support in the amount of $11,200. The chancellor computed the arrearage as follows:
 The date Doyle first reduced his payment to $400 is June 1, 1996. The date of judgement is June 1, 2000. That period of time is 48 months. The amount of child support in arrears for this time period is $9,600. The chancellor arrived at this amount by calculating the:

Amount of monthly child support ordered by the court $ 600
Amount of monthly child support paid by Doyle $ 400
Amount of monthly child support due $ 200
 × 48
 --------
 $ 9,600

 February 1, 2000 to June 1, 2000 is the time Doyle paid no child support. That period of time is 4 months. The additional amount of child support in arrears for this time period above the amount factored into the previous calculation is $1,600. The chancellor arrived at this amount by calculating the:

Amount of monthly child support ordered by the court $ 600
Amount of monthly child support factored into court's previous calculation $ 200
Amount of monthly child support due $ 400
 × 4
 -------
 $ 1,600

*391  Total amount of child support due is $11,200. The chancellor arrived at this amount by calculating the:

Amount of child support due from June 1, 1996 to June 1, 2000 $ 9,600
Amount of additional child support due from February 1, 2000 to June 1, 2000 $ 1,600
 ________
 $11,200

The chancellor did not give Doyle credit for the three months that Doyle paid $800 after Benji's twenty first birthday. Doyle did not request a credit for this amount, so this is not an issue in this appeal.
¶ 12. Doyle paid the $11,200 arrearage to the North Mississippi Regional Center, a division of MDMH. Counsel for MDMH determined that Karen was entitled to $8,400 of the arrearage as reimbursement to her for her past care of Michael before he became a resident at the group home. MDMH moved the court for an order authorizing it to deposit $8,400 into the registry of the court pending the court's final decision as to whom the money was owed. The chancellor granted the motion and ordered MDMH to deposit the funds into the chancery clerk's registry pending a final ruling as to whom the funds are owed.
¶ 13. Karen's appeal cites the following errors: the chancellor erred in modifying the support decree and in his computation of the child support arrearage; the chancellor erred in failing to enforce the provision of the divorce decree regarding the guns; the chancellor abused his discretion in denying Karen's motion to withdraw her motion to amend the pleadings and limiting the trial time to two hours per party; the chancellor abused his discretion in granting relief to Doyle who was in the court with unclean hands; the chancellor abused his discretion in excusing Doyle's contempt; and the chancellor abused his discretion in failing to award attorney fees.

LAW AND ANALYSIS

I. DID THE CHANCELLOR ERR BY MODIFYING THE SUPPORT DECREE AND COMPUTING THE ARREARAGE?

A. Modification of decree
¶ 14. Karen argues that the chancellor erred in modifying the divorce decree and says she is entitled to $22,800 in past due child support. Karen's figure is inaccurate because it allows no credit for the child support Doyle actually paid during the time period.
¶ 15. Karen is also incorrect in her argument that the chancellor committed error by modifying the decree. To obtain a modification in child support there must be a "substantial and material change in the circumstances of one of the interested parties arising subsequent to the entry of the decree sought to be modified." Gillespie v. Gillespie, 594 So.2d 620, 623 (Miss.1992). The material change noted in this case is Benji's reaching the age of majority. Due to the unusual needs of Michael, the chancellor made an allowance for Benji reaching the age of twenty-one, but wisely set the child support for Michael at $600 rather than one half the amount for both children. The chancellor's judgment was prudent and legally correct.
¶ 16. Karen contends that, even assuming the court was correct in reducing the amount of child support, Doyle should *392 have been required to pay $800 per month until the date the court entered its order reducing the amount to $600 per month. Karen is technically correct. In Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989), the supreme court noted that "the emancipation of one child does not automatically reduce the liability of the parent for the full amount" of the child support. Id. (quoting Schilling v. Schilling, 452 So.2d 834, 836 (Miss.1984)). The chancellor's decision, however, obtains an end result which is supported by Mississippi case law.
¶ 17. A chancellor may allow a child support obligor credit for support paid when one child is emancipated. The Nichols court noted that under proper circumstances the obligor should be allowed an opportunity to prove in court that he or she is entitled to a credit for child support payments made after one of the children is emancipated. Id.
¶ 18. In Sumrall v. Sumrall, 757 So.2d 279 (Miss.2000), the father paid all of the child's college tuition and living expenses during the time when the child was in college. He also paid child support to the mother during this period. The father petitioned for a downward modification of his support obligation. The chancellor suspended the father's child support obligation during the time the child was in college, but required him to pay the support during the time the child resided with his mother during school breaks. Sumrall, 757 So.2d at 281. The chancellor, however, did not make the suspension of child support payments retroactive to the date the child entered college. Id. at 284. The supreme court affirmed the chancellor's suspension of the father's child support obligation during the college months. Id. The court held the chancellor erred in not allowing the father a credit for the child support paid since the child began college. Id. The court ordered that the chancellor's modification of support be retroactive to the date that the child entered college and that the father be given a credit for amounts he paid while the child was in college. Id.
¶ 19. In Department of Human Services v. Fillingane, 761 So.2d 869 (Miss. 2000), the chancery court re-affirmed its holdings in Nichols and Sumrall. The court concluded: "a Chancellor should have the discretion to grant an obligor parent a credit for child support payments which were made on behalf of a child subsequent to that child's emancipation." Fillingane, 761 So.2d at (¶ 13). Chancellors are accorded broad discretion in the area of modification of child support, but this Court will reverse when the chancellor is manifestly in error in finding of fact or if there has been an abuse of discretion. Hammett v. Woods, 602 So.2d 825, 828 (Miss.1992).
¶ 20. The case sub judice is procedurally different from the above-cited cases but the final outcome is the same. Doyle did not pay support for Benji and, then, ask the chancellor for a credit. Instead, he unilaterally decreased the amount of his payments by half. If Doyle had continued to pay $800 per month, the chancellor would have been within his discretion to give Doyle a credit for the amount paid for Benji's support after Benji's twenty-first birthday. The chancellor's ruling had the same effect by modifying the amount of child support and ordering that his ruling take effect retroactively to coincide with Benji's twenty-first birthday.

B. Computation of the arrearage
¶ 21. Karen argues that if one accepts the chancellor's decision to reduce Doyle's support obligation to $600 as of the date Benji turned twenty-one, the chancellor should have multiplied $600 times the four months that Doyle failed to pay any support. *393 Karen mistakenly states that the chancellor only computed $400 per month for these four months. While the chancellor did multiply the four months by $400, as reflected in the above text, the chancellor also included these four months in his computation of the $9,600 figure.

C. To whom should the arrearage be paid?
¶ 22. Karen should receive the arrearage amount which accrued during the time Michael resided with her. MDMH acknowledges that Karen is entitled to $8,400 of the arrearage because Michael was in Karen's care during the period of time for which that amount of child support accrued. The chancery court, therefore, should release those funds that are in the court registry to Karen. Courts award child support to the custodial parent for the benefit and protection of the child. Lawrence v. Lawrence, 574 So.2d 1376, 1381 (Miss.1991). Michael was in Karen's care until September 1999, so she should receive the $8,400 due her for that time period.

II. DID THE CHANCELLOR ERR IN DETERMINING THAT DOYLE PEARSON HAD NOT VIOLATED THE GUN PROVISION OF THE DECREE?
¶ 23. Karen contends that Doyle violated the following provision of their divorce decree:
[Doyle] shall be allowed to pick up the personal firearm collection belonging to the parties in order that he may continue to trade and build a collection of such firearms. The parties agree between themselves that the Defendant [Doyle] shall build said collection on behalf of their two (2) minor children and that Defendant shall be allowed to trade and swap said firearms in that regard. The parties further agree that should the Defendant sell any such guns outright without applying the proceeds to the children's benefit, then he shall immediately be obligated to pay the Complainant the sum of Five Thousand Dollars and No/100 ($5,000.00).
¶ 24. Karen argues that Doyle should be required to pay her $5,000 because Doyle failed to build the gun collection. Doyle testified that he had not sold or traded any of the guns. He gave two guns to Benji and a couple of the guns were stolen. The chancellor ruled that Doyle did not violate this provision of the decree.
¶ 25. This Court may not disturb a chancellor's findings of fact in a domestic relations case if the findings are supported by credible evidence and are not manifestly wrong. Sumrall, 757 So.2d at (¶ 12). In the case sub judice, substantial credible evidence supported the chancellor's finding that Doyle complied with the above provision. There was no evidence that Doyle sold or traded any of the guns. The evidence supports the chancellor's ruling on this issue.

III. DID THE CHANCELLOR ABUSE HIS DISCRETION IN LIMITING THE TRIAL TIME TO TWO HOURS PER PARTY?
¶ 26. Prior to trial, the chancellor instructed the attorneys that he was limiting each party to two hours of trial testimony. Neither party objected at the time the chancellor announced this ruling. The chancellor informed Doyle's attorney when he had only three minutes remaining to present his side of the case. At the end of the three minutes, Doyle completed his case in chief in accordance with the court's ruling and without indication from Karen's attorney that she contested the two hour time limitation. The chancellor told Karen's attorney that her two hours would *394 begin after the lunch break. Only then, did Karen's attorney voice any objection to the ruling. She said, "I would like the record to reflect that we are not agreeing to any time limit on the case." This was the first indication that there was not complete agreement by both parties to the two hour limitation for trial testimony. Karen was in the process of testifying to the expenses she incurred on Michael's behalf when her two hour time limit lapsed.
¶ 27. Karen complains on appeal that the two hour time limit was inappropriate and constituted error. The case she cites in support of her argument is inapplicable to the issue in this case. In that case, Gilchrist Tractor Co. v. Stribling, 192 So.2d 409, 417 (Miss.1966), the supreme court held a trial court in error for declining to receive certain proof offered by one of the parties that certain accounts were invalid. The issue in this case is whether a trial court may impose a time limit for presenting evidence on both parties prior to starting the trial, if neither party is prejudiced by such time limitation and neither party objects until midway of trial after one party has complied with the rule and rested his case.
¶ 28. Rule 611 of the Mississippi Rules of Evidence permits judges to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to "(1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time...." Although every litigant has a right to introduce competent evidence supporting his or her case, if there is no evidence offered as to what a litigant would have presented but for the trial court's restriction, "there is no legitimate basis for complaining on appeal about the chancellor's control of evidentiary presentation." Morreale v. Morreale, 646 So.2d 1264, 1270 (Miss. 1994). While many litigants would "like to have unlimited time in which to present evidence in support of their positions during litigation, Rule 611 of the Mississippi Rules of Evidence is designed to give trial judges some measure of control over the operation of trials and the smooth flow of the litigation process." Moore v. Moore, 757 So.2d 1043, 1046 (Miss.Ct.App.2000).
¶ 29. Because the appellant in this case made no timely objection to the two hour time limitation nor made a record of the evidence she would have presented without such time limitation, the chancellor's ruling on this issue stands.

IV. DID THE CHANCELLOR ABUSE HIS DISCRETION IN GRANTING RELIEF TO DOYLE WHO WAS IN THE COURT WITH UNCLEAN HANDS, IN EXCUSING DOYLE'S CONTEMPT, AND IN FAILING TO AWARD ATTORNEY FEES?

A. Unclean hands
¶ 30. Karen argues that the chancellor should not have granted Doyle any relief because he was in arrears on his child support payments at the time of trial. Karen also accuses Doyle of hiding assets in an attempt to avoid an upward modification of his support of Michael as evidence of Doyle's unclean hands. Karen cited the Black's Law Dictionary definition of "unclean hands" but failed to cite any case law to support this assignment of error. This Court is not required to review unsupported assignments of error. McClain v. State, 625 So.2d 774, 781 (Miss.1993). The unclean hands doctrine provides "that he who comes into equity must come with clean hands" and he is not to receive the benefit of misconduct. Thornhill v. Chapman, 748 So.2d 819, 826 (Miss.Ct.App. 1999). The only "relief" the chancellor granted Doyle was to hold that he was no *395 longer obligated under Mississippi law to pay child support for his emancipated child. The chancellor was within his discretion to grant such relief.

B. Contempt
¶ 31. The chancellor ruled that Doyle was in contempt, but found that the contempt was not wilful because he acted on advice of his attorney. Karen argues that the court's holding was improper.
¶ 32. The supreme court has held that: "Contempt can only be willful. `A contempt citation is proper only when the contemnor has wilfully and deliberately ignored the order of the court.'" Mizell v. Mizell, 708 So.2d 55, 64 (Miss.1998). In Mizell, the father failed to pay college expenses and also quit paying child support when the child reached his eighteenth birthday. Mizell stopped paying support because his attorney advised him that he was no longer obligated to pay support when the child turned eighteen. Id. The supreme court affirmed the chancellor's refusal to cite Mizell for contempt. Id. In the present case, the chancellor explained that his ruling was based on the fact that Doyle acted on advice of his attorney. The chancellor correctly decided this issue.

C. Attorney fees
¶ 33. Karen argues that the chancellor abused his discretion in not awarding her attorney fees. While the chancellor held that Doyle was not in wilful contempt, he did hold that Doyle was in arrears for failure to pay support.
¶ 34. An award of attorney fees is generally left to the discretion of the chancellor. Brooks v. Brooks, 652 So.2d 1113, 1120 (Miss.1995). In Pearson v. Hatcher, 279 So.2d 654, 656 (Miss.1973), the supreme court stated:
[W]hen the responsibility of support by the father is reduced to judgment by order of the court, it is his duty to comply therewith. In the event of default of payments though it is not accompanied by a finding of contempt due to present inability to pay or for other reasons, attorney's fees nevertheless are the responsibility of the father.
¶ 35. Conversely, in Cumberland v. Cumberland, 564 So.2d 839, 841 (Miss. 1990), the father unilaterally reduced the amount of support he was paying for his child. He also petitioned the chancellor for a modification of support because he had experienced some financial difficulties. The chancellor held that he was in arrears in the amount of $5,620, but did not hold the father in contempt because of his financial difficulties. The chancellor refused to grant attorney fees to the mother. The supreme court stated that the chancery court has considerable discretion in determining an attorney fee award and the chancellor's findings on the issue will not be disturbed on appeal unless manifestly wrong. Id. at 844. The court affirmed the chancellor's refusal to grant attorney fees.
¶ 36. Because the chancellor in this case did not find Doyle in wilful contempt, we hold that his decision not to award attorney fees is within the limits of the manifest error standard of review and this Court should not disturb that decision.
¶ 37. In conclusion, we remand to the trial court for dissemination of the child support funds deposited into the chancery court registry in accordance with this Court's ruling. On all other matters, we affirm.
¶ 38. THE JUDGMENT OF THE CHANCERY COURT OF PANOLA COUNTY IS AFFIRMED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*396 McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND BRANTLEY, JJ., CONCUR.