868 So.2d 1054 (2004)
Deborah Stewart WHITE, Appellant,
v.
Douglas Bryans WHITE, Appellee.
No. 2003-CA-00171-COA.
Court of Appeals of Mississippi.
March 23, 2004.
*1055 Betsy E. Walker, Biloxi, attorney for appellant.
Harry M. Yoste, Gulfport, attorney for appellee.
Before SOUTHWICK, P.J., LEE and CHANDLER, JJ.
LEE, J., for the Court.

PROCEDURAL HISTORY AND FACTS
¶ 1. Deborah Stewart White and Douglas Bryans White were married in May 1982, and had two children, Alayne and Ashley, who were age thirteen and age seventeen, respectively, at the time of the trial. Both Douglas and Deborah were college graduates, and, although Deborah did work consistently during the marriage, Douglas was the primary breadwinner for the family. A job transfer for Douglas caused the Whites to move from Georgia to Mississippi in 1998. Douglas left Deborah in December 1999, and filed for divorce *1056 in January 2000, on the grounds of irreconcilable differences. Deborah filed her answer on August 11, 2000, and counterclaimed for divorce on the grounds of adultery, habitual cruel and inhuman treatment, or, in the alternative, irreconcilable differences.
¶ 2. A temporary order was entered September 1, 2000, granting Deborah temporary custody of the children and spousal and child support from Douglas. A trial on the matter was held July 9, 2001, after which the chancellor awarded Deborah a divorce on the grounds of habitual cruel and inhuman treatment. The chancellor also awarded both parties joint legal custody, with primary physical custody awarded to Deborah. Douglas was ordered to pay lump sum alimony and child support. The chancellor also awarded Deborah fifty percent of each of Douglas's financial investments, including his retirement account.
¶ 3. Deborah filed a motion to reconsider on November 29, 2001, which was eventually denied by the chancellor. Aggrieved, Deborah now perfects her appeal to this Court asserting that the chancellor erred in the following ways: (1) by not specifically classifying the parties' property and assets as marital and non-marital and not setting out specific findings of facts and conclusions of law; (2) by not addressing the National Guard retirement and distributing it properly; (3) by granting the improper amount and type of alimony; (4) by not awarding her attorney's fees; (5) by not including the 2000 bonus Douglas received as marital property and equitably dividing between them; (6) by not granting her the sum of $990 that was withheld by Douglas from his support payments between April 15, 2001, until June 30, 2001; and (7) by not specifically ordering Douglas to obtain the type of life insurance which would allow the minor children to be made permanent beneficiaries. Finding merit to the second issue, we reverse and remand. In reviewing the remaining issues, we find them to be without merit.

STANDARD OF REVIEW
¶ 4. When reviewing the decisions of a chancellor, this Court applies a limited abuse of discretion standard of review. McNeil v. Hester, 753 So.2d 1057(¶ 21) (Miss.2000). The findings of the chancellor will not be disturbed "unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard." Id.

DISCUSSION OF ISSUES

I. DID THE CHANCELLOR ERR BY NOT SPECIFICALLY CLASSIFYING THE PARTIES' PROPERTY AND ASSETS AS MARITAL AND NON-MARITAL PROPERTY AND BY NOT SPECIFICALLY SETTING OUT SPECIFIC FINDINGS OF FACTS AND CONCLUSIONS OF LAW?
¶ 5. In her next issue, Deborah claims that the chancellor never made a division of the marital and non-marital assets as per required by Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). Deborah also contends that, although the chancellor did make specific rulings and give some justifications for its decision, the rulings were not sufficient to meet the Ferguson standard. However, Deborah does not argue that the property was inequitably divided, just that the chancellor committed reversible error in not enumerating the Ferguson standard. The Ferguson guidelines include:
(1) economic and domestic contributions by each party to the marriage,
(2) expenditures and disposal of the marital assets by each party,

*1057 (3) the market value and emotional value of the marital assets,
(4) the value of the nonmarital property,
(5) tax, economic, contractual, and legal consequences of the distribution,
(6) elimination of alimony and other future frictional contact between the parties,
(7) the income and earning capacity of each party, and
(8) any other relevant factor that should be considered in making an equitable distribution.
Id. at 928. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to an equitable distribution by the chancellor. Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). In his order, the chancellor clearly articulated his rationale for the equitable division of the marital estate. The parties were married almost twenty years and neither argued that any of their assets should be considered non-marital property. Although the chancellor did not specifically describe the assets as marital, he implicitly did so in trying to equitably divide the assets. The chancellor addressed certain assets that Deborah and Douglas had acquired during their marriage, including a house, cars, retirement, stock options, and debt. We conclude that the chancellor's ruling on the issue on equitable division of the martial assets was within the court's authority and discretion to resolve such matters. An abuse of discretion or an application of a clearly erroneous legal standard has not been shown in this matter; thus, this issue is without merit.

II. DID THE CHANCELLOR ERR BY NOT CLASSIFYING THE NATIONAL GUARD RETIREMENT AS MARITAL PROPERTY AND DISTRIBUTING IT ACCORDINGLY?
¶ 6. In this issue, Deborah claims that Douglas' National Guard retirement should have been included as a marital asset in the chancellor's Ferguson analysis and, therefore, distributed equitably. In his ruling, the chancellor stated, "I do not recall any proof in the record or how many years he's been in the Guard or what the retirement, if any, is.... I don't think with the state of the record, I can make a ruling on that because there's nothing here." The chancellor further reiterated this, saying, "I don't have any idea how many years ... of overlapping marriage and guard time there is, how many year's he's got to retire if indeed he can retire. I have no idea of those figures." According to one of Douglas' exhibits, he had been in the National Guard for twenty-four years at the time of the trial.
¶ 7. Douglas argues that there was no evidence in the record concerning the retirement and that, since Deborah did not offer any proof on the issue or cross-examine Douglas about the retirement, the chancellor was correct in not classifying and distributing the retirement. Although that may be true, we find that it was incumbent upon Douglas to provide proof when submitting his financial disclosure form. Furthermore, we find that it was error for the chancellor not to request said information from Douglas before equitably dividing the parties' assets. It seems inequitable for Douglas to receive a benefit, the bulk of which was clearly accumulated during the marriage, and for Deborah to receive no benefit. We reverse and remand for further findings on this issue.

III. DID THE CHANCELLOR ERR IN GRANTING THE IMPROPER AMOUNT AND TYPE OF ALIMONY?
¶ 8. In her third argument, Deborah contends that she should have been awarded periodic alimony or, in the alternative, a greater amount of lump sum alimony. *1058 The Mississippi Supreme Court has held that an award of alimony is left to the chancellor's discretion. Voda v. Voda, 731 So.2d 1152(¶ 7) (Miss.1999). "In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993); Smith v. Smith, 607 So.2d 122, 126 (Miss.1992). The following factors are to be considered by the chancellor in deciding whether to award alimony: the income and expenses of the parties, the health and earning capacities of the parties, the needs of each party, the obligations and assets of each party, the length of the marriage, the presence or absence of minor children in the home, the age of the parties, the standard of living of the parties during the marriage and at support determination, the tax consequences of the spousal support order, fault or misconduct, wasteful dissipation of assets by either party, and any other equitable factors. Id.
¶ 9. With regards to lump sum alimony, the supreme court has listed several factors to be considered by the chancellor in determining whether to award lump sum alimony: (1) whether the spouse seeking lump sum alimony made a substantial contribution to the potential payor's accumulation of wealth; (2) length of the marriage; (3) disparity between the separate estates; and (4) whether the spouse seeking lump sum alimony would lack financial security in the absence of an award. Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988). However, the single most important factor is the disparity of the separate estates. Retzer v. Retzer, 578 So.2d 580, 592 (Miss. 1990); Cheatham, 537 So.2d at 438.
¶ 10. In his ruling the chancellor did not specifically state that he was following the Armstrong factors. However, the chancellor said, "Now, the purpose for this next award is as follows ..." and went on to address the factors and how he reached his decision. The chancellor determined that Deborah's net income, including child support, was approximately $3058 per month. As per Deborah's request, the chancellor awarded her the marital home and required her to assume the mortgage payments. Deborah was also awarded the van, personal property in the house worth approximately $11,500, and jewelry worth approximately $1500. The chancellor also awarded Deborah one-half of Douglas' 401K, one-half of OpTech stock, one-half of the Putnam Mutual Funds account, and 25% of whatever bonus Douglas receives in 2001. Deborah was ordered to pay the debt on the van and her Citibank debt.
¶ 11. After paying child and spousal support, Douglas' net income was $3424 per month. Douglas was ordered to keep the children on his health insurance and maintain life insurance with the children as primary beneficiaries. Douglas was also ordered to pay the following debts: the Chris White debt, Memorial Hospital debt, PFCU Visa, PFCU Thrifty, PFCU bill consolidation, Coast Cardiology debt, Capital One, Discover, GC Orthopedic, CPA tax return, and Farmers Bank, which is the loan for the pool.
¶ 12. The chancellor then determined that Deborah was assuming a greater debt than Douglas. After "taking in all those factors" and noting that Deborah needed assistance in caring for the children, that she had been out of the work force for a few years, and that Douglas' financial means were greater, the chancellor decided to award lump sum alimony rather than permanent alimony. The chancellor then stated, "The purpose of this is to balance the equities because the Wife is taking on a substantially greater debt structure by *1059 her own choice. I think in fairness this award must be made." The lump sum alimony consisted of $350 per month for the first twenty-four months, $250 per month for the next twelve months, $150 per month for the next twelve months, and $100 per month for the next twelve months.
¶ 13. The chancellor, pursuant to the Armstrong and Cheatham factors, determined that Deborah was entitled to receive lump sum alimony. Armstrong, 618 So.2d at 1280; Cheatham, 537 So.2d at 438. We cannot find that the chancellor abused his discretion in awarding the lump sum alimony, nor can we find that the denial of permanent alimony was so oppressive, unjust or grossly inadequate to evidence an abuse of discretion; thus, this issue is without merit.

IV. DID THE CHANCELLOR ERR IN NOT AWARDING DEBORAH HER ATTORNEY'S FEES?
¶ 14. In her next issue, Deborah claims that the chancellor erred in not awarding her attorney's fees. An award of attorney's fees is generally left to the discretion of the chancellor. Gray v. Pearson, 797 So.2d 387(¶ 34) (Miss.Ct.App. 2001). Furthermore, the chancellor's findings on the issue of attorney's fees will not be disturbed unless manifestly wrong. Cumberland v. Cumberland, 564 So.2d 839, 844 (Miss.1990). In McKee v. McKee, 418 So.2d 764, 767 (Miss.1982), the supreme court established certain factors to be considered in making an award of attorneys' fees, including the financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, the time and labor required, the customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
¶ 15. Although Deborah claims that she is unable to pay her attorneys' fees, she offers no proof in the record of her inability to pay them. Furthermore, Deborah fails to present any evidence as to the amount of her attorneys' fees pursuant to McKee. See Westerburg v. Westerburg, 853 So.2d 826 (Miss.Ct.App.2003); Carpenter v. Carpenter, 519 So.2d 891 (Miss.1988). We may not always agree that a chancellor decided the issues in a manner that we would have. However, our limitation as an appellate court is to determine whether the decisions were within the range of discretion permitted by the evidence and the applicable law. Here, we cannot find that the chancellor abused his discretion in failing to award Deborah her attorney's fees; thus, this issue is without merit.

V. DID THE CHANCELLOR ERR BY NOT INCLUDING THE 2000 BONUS DOUGLAS RECEIVED AS MARITAL PROPERTY AND EQUITABLY DIVIDING IT AS SUCH?
¶ 16. In this issue, Deborah contends that the chancellor erred in not including Douglas' 2000 bonus as marital property and equitably dividing it between the parties. At trial, Douglas testified that he did receive a bonus in 2000; however, the details as to the exact amount of the bonus were not clear in the record. On his financial disclosure form, Douglas listed his monthly income under "Salary and Wages, including commissions, bonuses, allowance and overtime." According to the available pay stubs for 2000 in the record, Douglas received a bonus of $3500 on April 1, 2000. Douglas included this bonus in his income on his joint tax return and, consequently, paid taxes on the amount.
¶ 17. Deborah argues that the 2000 bonus is no different from the 2001 bonus. However, at the time of trial, Douglas had not yet received a 2001 bonus. The chancellor *1060 determined that Deborah should benefit from the 2001 bonus, if received, for the period of time she was married to Douglas. We fail to see how this bonus, which was probably either used to help pay temporary support to Deborah or to lessen the family debt, should be considered an asset at the time of the divorce and thus divided. We cannot find that there was an abuse of discretion; thus, this issue is without merit.

VI. DID THE CHANCELLOR ERR IN NOT ASSESSING DOUGLAS WITH PAST DUE TEMPORARY SUPPORT?
¶ 18. In this issue, Deborah claims that the chancellor erred in not granting her $990 of temporary support arrearage she alleged was due. According to the temporary order on September 1, 2000, Deborah was awarded $870 per month. However, Deborah claims that there was a verbal agreement between the parties that Douglas would pay $1200 per month until trial. Deborah received $1200 until mid-April 2001, when she received $435, one-half of $870. Douglas continued to pay the $870 per month until the trial in July 2001. In his testimony Douglas was asked why he paid $1200 a month until April 2001. The temporary order stated that Douglas provide health insurance for Deborah and, after stating that it was unavailable, Douglas said: "Our open enrollment to add or change the health insurance was May of this year and effective May 1, I covered her with health insurance and dropped back to the $870. I was paying her more money to try to make up the difference in not being able to provide health insurance at the time."
¶ 19. The chancellor, upon hearing Deborah's testimony concerning the verbal agreement, stated that "I will consider it for what it's worth and give it such weight, worth and credibility as it deserves," but that he would have to "go on what is the situation now, where's the money now" with regards to support payments. Obviously, the chancellor did not find that Douglas was in arrears and we fail to do so as well. This issue is without merit.

VII. DID THE CHANCELLOR ERR IN NOT SPECIFICALLY ORDERING DOUGLAS TO OBTAIN THE TYPE LIFE INSURANCE WHICH WOULD ALLOW THE MINOR CHILDREN TO BE MADE PERMANENT BENEFICIARIES?
¶ 20. In her last issue, Deborah argues that the National Guard Servicemen's Group Life Insurance policy, which Douglas has in effect, is preempted by federal law. The chancellor ordered Douglas to maintain the minor children as permanent beneficiaries on two separate life insurance policies with Deborah as trustee until the children reach the age of twenty-one. Deborah cites Ridgway v. Ridgway, 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981), for the proposition that Douglas cannot be compelled to make his children the beneficiaries of his SGLI. However, in Ridgway, the husband, after divorce, made his second wife the beneficiary of his SGLI policy and, upon his death, the first wife and the second wife each filed a claim to the policy proceeds. The court held that an insured servicemen's beneficiary designation under a life policy issued pursuant to SGLI prevails over a constructive trust imposed upon the policy proceeds by a state court decree. Id. at 46, 102 S.Ct. 49. According to the record, Douglas' minor children were already named as beneficiaries of the SGLI policy prior to the chancellor's order that he keep the children as such. As Douglas is still alive and has not changed the primary beneficiaries on the policy, we decline to assume that he will do so and, *1061 further, decline to find the chancellor's actions constituted reversible error.
¶ 21. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS WITH A SEPARATE WRITTEN OPINION JOINED BY BRIDGES AND CHANDLER, JJ.
IRVING, J., Concurring:
¶ 22. I agree with the majority that this case must be reversed and remanded because the chancellor failed to make a determination regarding the status of Douglas's national guard retirement. The chancellor concluded that he did not have enough evidence before him to make any determination about the guard retirement. Given the fact that one of Douglas's exhibits showed that he had been in the National Guard for twenty-four years, the chancellor was placed on notice that a major portion of the guard retirement had been accumulated during the course of the marriage. Therefore, I agree with the majority that the chancellor erred in not making any determination regarding the guard retirement.
¶ 23. However, the majority seems to place the responsibility for this error solely upon the chancellor and Douglas, finding that "it was incumbent upon Douglas to provide proof when submitting his financial disclosure form." That is true, but it is also true that it was incumbent upon Deborah to produce sufficient evidence upon which the chancellor could make thorough and sufficient findings of fact respecting all the issues before the court. Therefore, I write separately to register my view that both parties bear responsibility for the error and that the chancellor should not be put in error when the parties have shirked their responsibility. Nevertheless, since, as previously observed, there was at least one piece of evidence introduced which clearly shows that a substantial portion of the period of the national guard service overlapped the period of the duration of the marriage, I concur that this case should be reversed for further consideration of the classification and distribution of Douglas's national guard retirement. Were it not for this one piece of evidence, I would affirm the judgment of the chancellor.
BRIDGES AND CHANDLER, JJ., JOIN THIS SEPARATE WRITTEN OPINION.