766 So.2d 123 (2000)
Blaine C. WOLFE, Appellant,
v.
June Ann M. WOLFE, Appellee.
No. 1998-CA-01168-COA.
Court of Appeals of Mississippi.
September 5, 2000.
*125 Gary L. Roberts, Gautier, Attorney for Appellant.
Marcus Pittman, Pascagoula, Attorney for Appellee.
BEFORE McMILLIN, C.J., LEE, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Blaine Wolfe appeals the decree of divorce judgment of the Jackson County Chancery Court submitted in the child custody, alimony and property settlement agreement. Mr. Wolfe raises the following assignments of error on appeal
I. THE TRIAL COURT ABUSED ITS DISCRETION AND WAS MANIFESTLY IN ERROR BY AWARDING CUSTODY OF THE MINOR CHILDREN TO JUNE WOLFE, AND IN FAILING TO ADDRESS ALL OF THE FACTORS REQUIRED BY ALBRIGHT V. ALBRIGHT.
II. THE TRIAL COURT ABUSED ITS DISCRETION AND WAS MANIFESTLY IN ERROR BY FAILING TO DIVIDE THE ASSETS OF THE PARTIES PURSUANT TO FERGUSON V. FERGUSON.
III. THE TRIAL COURT ABUSED ITS DISCRETION AND WAS MANIFESTLY IN ERROR IN ASSESSING ALIMONY AGAINST THE APPELLANT BLAINE C. WOLFE.
We affirm on all issues with the exception of the chancellor's decision to grant joint legal custody.

FACTS
¶ 2. Blaine and June Wolfe were married on May 24, 1983, and June filed for divorce on April 14, 1994 in Jackson County, Mississippi on the grounds of habitual cruel and inhuman treatment. Three children were born to the marriage, Coleena Marie Wolfe, born May 29, 1984, Seth Christopher Wolfe, born March 21, 1987, and Joseph Blaine Wolfe, born February 25, 1993. The matter came on for hearing before the court on November 21, 1995, but the parties decided to withdraw their fault-based pleadings and proceed on the grounds of irreconcilable differences. The parties were granted a judgment of divorce on November 22, 1995 on the grounds of irreconcilable differences, and the court awarded the parties joint legal custody of the minor children, with the *126 remaining issues reserved until a supplemental judgment of divorce was later entered. An agreed order was filed March 12, 1997, pursuant to a motion filed on October 7, 1996, which set aside ab initio the judgment of divorce since the divorce had not been accompanied by a written consent to divorce on the ground of irreconcilable differences nor a written child custody and property settlement agreement as required by Miss.Code Ann. § 93-5-2 (Rev.1994). The case was tried, and the court awarded the parties joint legal custody of the three minor children with the children to reside in the home of the plaintiff, June Ann M. Wolfe, during the public school year and to reside in the home of the defendant, Blaine C. Wolfe, during the summer months when school is not in session. The court also found that Blaine's dissipation of some marital funds just prior to the separation equaled his share of the equity in the marital home, and thus the court granted June Ann M. Wolfe full use, possession and title to the marital home. Furthermore, the court awarded June Ann M. Wolfe "temporary" alimony in the amount of $300 per month for one year and $200 per month for two years. Blaine now appeals this decision.
¶ 3. At the time of the trial Mr. Wolfe worked as an electronic technician for the Chesapeake Systems Integration Corporation out of Virginia, maintaining air traffic control simulators on Keesler Air Force Base. Mr. Wolfe grossed approximately $2752.53 a month. Mrs. Wolfe just received a bachelors degree in therapeutic recreation from the University of South Alabama and was actively searching for a job in that field. She worked part time at the YMCA, six hours a week, and one hour a week at North Shore Psychiatric Hospital doing therapeutic recreation sessions for senior citizens.

ANALYSIS

I. THE TRIAL COURT ABUSED ITS DISCRETION AND WAS MANIFESTLY IN ERROR BY AWARDING CUSTODY OF THE MINOR CHILDREN TO JUNE WOLFE, AND IN FAILING TO ADDRESS ALL OF THE FACTORS REQUIRED BY ALBRIGHT V. ALBRIGHT.

¶ 4. The polestar consideration in a child custody case is the best interest and welfare of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Additionally, our supreme court has outlined the factors to consider in child custody cases: the age of the child, health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent; and other factors relevant to the parent-child relationship. Id.
¶ 5. Although both parents desired custody, it is apparent from the record that the chancellor found both of the parents fit to have custody of the children in that he awarded both parents joint legal custody and essentially split physical custody between the parents. The record is clear that all the Albright factors were presented to the court and the chancellor did not deem one parent more suitable than the other; therefore, he awarded joint custody. June is to have physical custody of the children during the school year, and Blaine is to have custody during the summer months; this effectively signifies that he deemed both parents ready, willing, and able to suitably raise the children. The visitations are equal, fair and supported by the record.
*127 ¶ 6. Pursuant to Miss.Code Ann. § 93-5-24(2) both parents must agree to joint custody in a divorce where the grounds are irreconcilable differences. Such was not the case here. We are compelled to reverse the chancellor on this point. Oddly enough, it is only in divorce cases involving irreconcilable differences that a chancellor cannot award joint legal custody unless both parties request it. Under all twelve of the other grounds for divorce a chancellor can award joint legal custody if either spouse requests it. This is an anomaly in divorce law that the Mississippi Legislature may wish to address.

II. THE TRIAL COURT ABUSED ITS DISCRETION AND WAS MANIFESTLY IN ERROR BY FAILING TO DIVIDE THE ASSETS OF THE PARTIES PURSUANT TO FERGUSON V. FERGUSON.

¶ 7. Blaine argues that the chancellor below failed to make findings of fact and conclusions of law when evaluating the equitable distribution of the marital home. It is well known that it is within the chancellor's authority to make an equitable division of all jointly acquired real and personal property. Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). In making an equitable division of marital property, however, the chancellor is not required to divide the property equally. Love v. Love, 687 So.2d 1229, 1232 (Miss.1997); Trovato v. Trovato, 649 So.2d 815, 817-18 (Miss. 1995). Instead, equitable distribution is governed by the guidelines set out by our supreme court in Ferguson. These guidelines include:
(1) economic, and domestic contributions by each party to the marriage,
(2) expenditures and disposal of the marital assets by each party,
(3) the market value and emotional value of the marital assets,
(4) the value of the nonmarital property,
(5) tax, economic, contractual, and legal consequences of the distribution,
(6) elimination of alimony and other future frictional contact between the parties,
(7) the income and earning capacity of each party, and
(8) any other relevant factor that should be considered in making an equitable distribution.
Ferguson, 639 So.2d at 928. Furthermore, in setting out the Ferguson guidelines to be followed by chancellors when evaluating equitable distributions of marital property, our supreme court has directed chancellors "to support their decisions with findings of fact and conclusions of law for purposes of appellate review." Id.
¶ 8. Applying these factors to this case, it cannot be said that the chancellor was manifestly wrong in his distribution of the Wolfe's marital assets. He considered the contributions and expenditures of each of the parties and the market value of the residence. More specifically, the chancellor stated:
[T]he homestead, located at 6524 Mayfair Road, Ocean Springs, Mississippi, was purchased in June of 1992 and was used as a principle residence of the parties and their children. As marital troubles developed, the parties separated and June Ann M. Wolfe purchased a home using her own funds and money borrowed from her parents, which house is located at 15217 Freemont Drive in Biloxi, Mississippi. The testimony reveals that the parties reconciled after some period of time and that the home which belongs exclusively to June Ann M. Wolfe, was sold on February 10, 1995, for nineteen thousand seven hundred ninety-three and no dollars ($19,793.00), which was derived as net. The parties agreed that $3,000.00 of this money went to pay back June's parents for the down payment and for making certain past payments on June's residence. There is a conflict between the parties as to what happened to the rest of the money, with both parties agreeing that between $7,000.00 and $8,000.00 *128 was used to repay a loan against the residence taken out by Blaine C. Wolfe, with June Ann M. Wolfe's consent. This money was supposed to have been used for improvements or repairs to make the property more sellable. The parties differ on the amount of the money which was actually placed back into the property, which belonged to June Ann M. Wolfe, with June Ann M. Wolfe claiming that less money was used by Blaine C. Wolfe for that purpose, than Blaine C. Wolfe claims was used. It is clear from the testimony, however, that a substantial sum was used for Christmas for the children. If $7,000.00 was taken to repay the loan for the net, approximately $9,000.00 should have been left. At this point the parties agree that in two weeks or less, after the house belonging to June was sold, that Blaine again separated from her and Blaine had control of the remaining funds. Mr. Wolfe had stated that he used the money to pay credit card bills and Mrs. Wolfe stated that she was billed for approximately $1,200.00 for credit card bills which were never paid by Mr. Wolfe. The court finds that Mrs. Wolfe's money from the sale of the house must be accessed against Mr. Wolfe's equity in the marital homestead and that the realty, given homestead's proper value where equity is concerned, is that the two cancel out each other.
¶ 9. The chancellor's ruling clearly reveals that he did in fact make findings of fact regarding virtually every Ferguson factor and drew legal conclusions from those findings. Therefore, we cannot find that the chancellor committed manifest error in his decision.

III. THE TRIAL COURT ABUSED ITS DISCRETION AND WAS MANIFESTLY IN ERROR IN ASSESSING ALIMONY AGAINST THE APPELLANT BLAINE C. WOLFE.
¶ 10. Our scope of review in domestic relations matters is limited by our familiar substantial evidence/manifest error rule. Stevison v. Woods, 560 So.2d 176, 180 (Miss.1990). "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990). See also Ferguson, 639 So.2d at 921; Faries v. Faries, 607 So.2d 1204, 1208 (Miss.1992). In other words, "[o]n appeal [we are] required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." Newsom v. Newsom, 557 So.2d 511, 514 (Miss. 1990). See also Dillon v. Dillon, 498 So.2d 328, 329 (Miss.1986). This is particularly true in the areas of divorce, alimony and child support. Tilley v. Tilley, 610 So.2d 348, 351 (Miss.1992); Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989). The word "manifest," as defined in this context, means "unmistakable, clear, plain, or indisputable." BLACK'S LAW DICTIONARY 963 (6th ed.1990); Magee v. Magee, 661 So.2d 1117, ¶ 22 (Miss.1995). Furthermore, great deference is given to the chancellor because he is in a better position to determine what action would be fair and equitable in the situation than the appeals court. Tilley, 610 So.2d at 351.
¶ 11. Our supreme court has recognized three forms of alimony: 1) lump sum alimony, 2) rehabilitative periodic alimony, and 3) periodic alimony. "Lump sum alimony ... constitutes a fixed liability which is not subject to modification." McDonald v. McDonald, 683 So.2d 929, 931 (Miss.1996). "Rehabilitative alimony has been defined as modifiable, for a fixed period of time, and vesting as it accrues. While both rehabilitative periodic alimony and lump sum alimony which is not paid all at once can share the same characteristics of being a certain amount of money paid over a certain amount of time, they are distinguishable in their modifiability, respective purposes, and by the intent for which the chancellor grants them." Hubbard v. Hubbard, 656 So.2d 124, 129 (Miss.1995). Furthermore, "rehabilitative *129 periodic alimony" is not intended as an equalizer between the parties but is for the purpose of allowing the less able party to start anew without being destitute in the interim. Id. at 130. In comparison, lump sum alimony is intended as an equalizer between the parties to serve equity amongst them completely once and for all. Id. Finally, "periodic alimony is subject to modification and ceases upon the wife's remarriage or upon the husband's death." McDonald, 683 So.2d at 931. The forms of awards are not mutually exclusive though they may have different and similar effects and purposes. Hubbard, 656 So.2d at 130.
¶ 12. The chancellor designated that Blaine would pay a definite amount for a set number of months. That has attributes of lump sum alimony, and the trial court called it "temporary" alimony. Id. at 129. We hold that in this case that it is clearly not lump sum since no total amount was ever stated. The record is clear that the chancellor was trying to help June get on her feet after the marriage and while she was still in school. That conclusion is supported by several cases where the supreme court has held that if the chancellor was not thinking in terms of a fixed sum payable out over time, but was considering a periodic sum necessary for some purpose that would terminate after several years, it is classified as rehabilitative or temporary periodic alimony. Id.; Waldron v. Waldron, 743 So.2d 1064, 1065 (Miss.Ct.App.1999); Turnley v. Turnley, 726 So.2d 1258, 1265 (Miss.Ct.App.1998).
¶ 13. Our supreme court stated that the following factors are to be considered by the chancellor in arriving at findings and entering judgment for periodic alimony:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties, both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Hammonds v. Hammonds, 597 So.2d 653, 655 (Miss.1992); Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993).
¶ 14. In compliance with our standard of review, we hold that the chancellor's findings of fact were not against the overwhelming weight of the evidence. The chancellor clearly stated that he examined the income tax returns of the parties and determined that Blaine was making minimal contributions to the family while June was supporting the family. During that time Blaine obtained some college education. The chancellor also found that as June began her education Blaine refused to make any contributions to help her. These findings of fact address the Armstrong factors, indicating that the chancellor took them into consideration in determining whether and how much alimony June should receive. We will not reverse the chancellor's decision to award Ms. Wolfe rehabilitative alimony (although called temporary).
¶ 15. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED IN PART. COSTS OF THIS APPEAL ARE ASSESSED 2/3 TO *130 THE APPELLANT AND 1/3 TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., IRVING, AND MOORE, JJ., CONCUR.
BRIDGES, J., CONCURS IN PART, DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.
LEE, J., CONCURS IN PART, DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES AND PAYNE, JJ.
MYERS, J., NOT PARTICIPATING.
BRIDGES, J., concurring in part, dissenting in part:
¶ 16. I concur with my colleagues in the majority with respect to the issue of the assessment of alimony against the appellant in this case.
¶ 17. I am also in agreement with the majority's ultimate conclusion that the chancellor made certain findings and reached certain conclusions as to the division of marital assets and as to the custody of the Wolfe children. However, I must respectfully disagree that the chancellor pursued his fact-finding and reached his conclusions in the proper manner. It has been said by the majority that it is imperative that a chancellor consider the Albright v. Albright factors when considering to which parent custody of the minor children will necessarily lie. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). As has also been stated, our central consideration must be the best interest of the children. Id. It is my opinion that the chancellor erred when he did not consider and discuss each Albright factor when rendering his decision on the custody of the Wolfe children. Whether or not I or the majority agree with the ultimate outcome of the custody issue is irrelevant here as our job is only to evaluate whether the chancellor's decision was manifest error based on a proper analysis of each of the Albright factors. Id.
¶ 18. In Hayes v. Rounds, the Supreme Court of Mississippi clearly stated that "although the court explicitly acknowledged that the Albright factors apply to the present case, it is not clear whether the court properly applied the factors." Hayes, 658 So.2d at 865. Further, the supreme court noted that "[w]hile we cannot say that the chancellor's conclusion is so lacking in evidentiary support as to be manifest error, in the absence of specific findings we cannot affirm with confidence that the best result has been reached." Id. at 866.
¶ 19. Additionally, in Hamilton v. Hamilton, this Court reviewed the record in that case and found that while the chancellor expressly stated that he considered certain factors found to be necessarily addressed in the Albright decision, he "did not specifically address the remaining [ones]. It is for this reason we reverse and remand for the purposes of addressing each of the Albright factors." Hamilton v. Hamilton, 755 So.2d 528, 531 (Miss.Ct. App.1999) (emphasis added). I am also in agreement with the Honorable Justices Lee, Banks and McRae of the Mississippi Supreme Court in their dissent of the opinion on Moak v. Moak, 631 So.2d 196, 199 (Miss.1994). Justice McRae states and Justice Lee joins in the following:
The Chancellor did not list the elements and evidence to support his ruling, but simply stated that both parents were fit to retain custody of their children. * * * [As such,] [t]he majority is incorrect in not reversing the Chancellor's decision since the Chancellor failed to follow the instructions of this Court in Albright v. Albright....
Moak, 631 So.2d at 199.
Justice Banks, in his separate dissent to the Moak decision asserts, "[b]ecause the decision of the chancellor leaves substantial doubt as to whether all of the Albright factors were adequately considered, I *131 would reverse and remand for further findings in this regard." Id.
¶ 20. Here, I find nothing in the record showing that the chancellor gave dutiful reflection to each and every Albright factor which I find to be a necessary step in the chancellor making a proper determination of custody and thereby giving this Court an adequate opportunity to make an appropriate and thorough review of his ruling on the custody of the Wolfe children. I cannot, in good conscience, concur with the majority on this point when I am not convinced, without express evidence of such, that each and every factor was given due consideration and equal weight in accordance with Albright, with our previous decisions and with that of the Mississippi Supreme Court. Therefore, I am not persuaded that, in fact, the best possible interest of the child was considered according to these very particular Albright guidelines.
¶ 21. I am also in disagreement with the majority regarding the method of the division of the marital assets used by the chancellor. In Parsons v. Parsons, 741 So.2d 302, 306 (Miss.Ct.App.1999), I wrote this Court's opinion directing that the Ferguson v. Ferguson guidelines be used whenever a chancellor must consider the issue of the division of marital property. Parsons, 741 So.2d at 306. Much like my above analysis of the chancellor's failure to use an analysis of each Albright factor to determine the best interest of the children, I am troubled that the chancellor's judgment in our instant case does not lay out, in full, the factors required to determine an accurate division of the assets under Ferguson. Ferguson, 639 So.2d 921, 928 (Miss.1994). Once again, as with the Albright factors for child custody, I am not convinced that the chancellor took each and every Ferguson factor into consideration before rendering his ultimate decision on the issue. As with the issue of child custody above, I am not disputing the chancellor's judgment as to his disbursement of the marital property, only the method by which the chancellor arrived at his decision.
¶ 22. In a recent Mississippi Supreme Court case, the decision of the chancellor was reversed on the division of marital property for lack of specificity in the utilization of the Ferguson factors. Louk v. Louk, 761 So.2d 878 (¶ 13) (Miss.2000). Similarly, in Gray v. Gray, 745 So.2d 234, 240 (Miss.1999), the Mississippi Supreme Court reversed the chancellor's ruling finding that the chancellor in that case erred by not making specific findings of fact as to property division as well as alimony and child support. Gray, 745 So.2d at 240. The court agreed with the appellant that the guidelines for property division set out in Ferguson were not specifically followed and that therefore the court could not make a proper review of the chancellor's findings. Id. The chancellor's decision was vacated and remanded back to the chancery court with instructions for more specific findings pursuant to the Ferguson factors in determining property division, as well as the factors to be considered for alimony under Brabham v. Brabham, 226 Miss. 165, 176, 84 So.2d 147, 153 (1955). Gray, 745 So.2d at 240. Additionally, in Kilpatrick v. Kilpatrick, 732 So.2d 876, 881 (Miss.1999), the Mississippi Supreme Court reversed and remanded the chancellor holding that the chancellor must make more specific findings pursuant to Ferguson and more carefully "review the distribution of property in light of those findings." Kilpatrick, 732 So.2d at 881.
¶ 23. I am of the opinion that the chancellor in the instant case, while citing in his judgment that he properly reviewed the Albright factors in his determination of child custody and the Ferguson factors in his determination of the distribution of the marital property, fell short of his duty. For this Court to be secure in affirming or reversing any case on the issue of child custody and distribution of marital property, we must be convinced that the evidence was properly weighed by the chancellor *132 according to the specific guidelines laid out by Albright and Ferguson. Hayes, 658 So.2d at 866; Carrow v. Carrow, 642 So.2d 901, 907 (Miss.1994). I am not so convinced. Therefore, in light of the aforementioned cases and the lack of adequate discussion with specificity of these guidelines by the chancellor in making his decisions, I am compelled to dissent to the findings of my colleagues in the majority. It is my opinion that courts should move toward the concept that a determination of child custody and/or allocation of marital property should be held to be erroneous where the chancellor was not thorough in his discussion, point by point and factor by factor of both Albright and Ferguson. I urge that in the future, chancellors in such a position would recognize the benefit to themselves and the entire court system of utilizing such a method in our collective endeavor to ensure that the best interests of all parties who may be affected are observed.
LEE, J., concurring in part, dissenting in part:
¶ 24. Once again the majority has said that the chancery court cannot award joint custody in an irreconcilable differences divorce without having been specifically requested to do so by the parties. I disagree.
¶ 25. The parties in this case initially filed for divorce asserting fault-based grounds and subsequently the court entered a judgment of divorce on the ground of irreconcilable differences. A motion to set aside the judgment of divorce was filed on the ground that the parties had failed to comply with the mandatory jurisdictional requirements of Miss.Code. Ann. § 93-5-2 (Rev.1994). This motion contended that neither party had executed a written consent to a divorce, custody, or property settlement agreement. Therefore, by agreed order the judgment for divorce was set aside ab initio, effectively reinstating the prior temporary judgment. The matter was again brought to trial and at that time the parties filed their consent to divorce on the ground of irreconcilable differences and agreed for the lower court to adjudicate, among other issues, the custody of the children.
¶ 26. The procedural aspects of Miss. Code Ann. § 93-5-2(3)(Rev.1994) provide that before a divorce can be granted, matters regarding custody of a child of that marriage and property rights between the parties must either be adjudicated by the court or agreed to by the parties and found to be sufficient by the court. Johnston v. Johnston, 722 So.2d 453, 457 (Miss. 1998). The parties in this case specifically gave their consent to the court to determine the issue of child custody.
¶ 27. As I wrote in Morris v. Morris, 758 So.2d 1020 (¶ 16) (Miss.Ct.App.1999), I find nothing in Miss.Code Ann. § 93-5-24(2) (Rev.1994) that prohibits the chancery court from awarding joint custody under such circumstances. That statute states, "Joint custody may be awarded where irreconcilable differences is the ground for divorce, in the discretion of the court, upon application of both parents." (emphasis added). Unlike the majority, I find this statute to be an entitlement to the people rather than one that takes away the courts' authority. This section merely affords the parties in an irreconcilable differences divorce the right to apply for joint custody. The statute merely gives the parties the right to make a direct application for joint custody just as they applied for joint divorce. Even so, the awarding of joint custody is discretionary with the court. It is nonsensical that the chancery court has the authority to award custody as it deems proper and to whom it deems proper in all cases of divorce involving fault, but does not have such authority unless so requested in an irreconcilable differences divorce. Certainly in an irreconcilable differences divorce it is understandable that the court could easily find both parents fit and the situation even more suitable for joint custody than possibly in a fault-driven divorce. Finally, as I said in Morris, if, as the majority holds, the parties must apply for joint custody *133 before the same can be granted in an irreconcilable differences divorce, by submitting a request to the court for a ruling, the Wolfes have constructively done so.
¶ 28. To deny the court the control over the welfare of minors goes against statutory and case law which for years has said the polestar and paramount consideration in all custody cases is the best interest of the children. Moak v. Moak, 631 So.2d 196, 198 (Miss.1994). Interestingly, in its recent decision, McLemore v. McLemore, 762 So.2d 316 (¶ 1) (Miss.Ct.App.2000), the Mississippi Supreme Court, when confronted with the same situation as our court, although not raised as a special issue on appeal, apparently had no difficulty with the decision of the chancellor to award joint custody where there had been no specific request by the parties to do so.
¶ 29. The majority correctly asserts that because divorce is a creature of statute that the statute must be strictly construed. However, it has confused a party's right to a divorce with the issue of child custody. The custody and care of minor children is not, never has been, and should never be purely a legislative function. Rather, the statute should enable the chancellor to establish "what is in the best interest of children". The authority and decisions over children has been and should be vested in the chancery courts. Miss.Code Ann. § 93-5-24(2) (Rev.1994) gives the parties the opportunity to seek a divorce, settle their property and custodial rights, and present the same to the court for approval. However, having failed to decide all of these issues, once the divorce is granted, the chancery court then becomes vested with the authority to decide the property and custodial rights of the parties. Consequently, I dissent with the majority on this issue.
BRIDGES AND PAYNE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.