890 So.2d 944 (2004)
Timothy Bun HAMMERS, Appellant
v.
Stephanie Evonne (Gilliam) HAMMERS, Appellee.
No. 2002-CA-01671-COA.
Court of Appeals of Mississippi.
August 3, 2004.
Rehearing Denied October 19 and November 11, 2004.
Certiorari Denied January 6, 2005.
*948 Kay Farese Turner, attorney for appellant.
John Thomas Lamar, Senatobia, attorney for appellee.
Before SOUTHWICK, P.J., IRVING and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Stephanie Evonne (Gilliam) Hammers and Timothy Bun Hammers were granted a divorce by the DeSoto County Chancery Court. Timothy now appeals and argues that the chancellor erred: (1) in awarding custody; (2) in awarding alimony; (3) in his equitable division of marital property; (4) in excluding the appellant's expert witness; (5) in allowing the appellee to present proof of attorney's fees after the conclusion of the trial on the matter; and (6) in awarding attorney's fees. We affirm issues one through five and reverse and render the chancellor's award of attorney's fees.

FACTS
¶ 2. Timothy and Stephanie were married on October 26, 1985. Their marriage produced two children: a son born on February 4, 1991, and a daughter born on May 7, 1993. Timothy and Stephanie claim to have separated on April 6, 2000, yet they both continued to reside in the marital residence throughout the divorce litigation. Timothy filed a complaint for divorce on June 23, 2000.
¶ 3. Timothy and Stephanie executed a written agreement, pursuant to Mississippi Code Annotated § 93-5-2 (Rev.1994), that authorized the chancellor to grant a divorce on the ground of irreconcilable differences. The agreement specifically provided that the chancellor would decide child custody and support, division of marital *949 property, Stephanie's entitlement to alimony, if any, and Stephanie's entitlement to attorney's fees, if any.
¶ 4. On July 25, 2002, the chancellor issued the ruling of the court, which set forth the chancellor's detailed findings of fact and conclusions of law. The chancellor entered a final decree of divorce on August 14, 2002.
¶ 5. In his ruling, the chancellor found that the best interests of the children would be served by awarding Stephanie primary physical custody of the parties' two minor children, with the parties having joint legal custody, and ordered Timothy to pay $1,316.30 a month in child support.
¶ 6. Timothy and Stephanie stipulated that they had no separate assets, and, as such, all of their property was classified as marital property. The chancellor found the contributions of the parties to be equal and divided all of their assets in half. After awarding Stephanie possession and ownership of the marital home and all furnishings within the home, her vehicle, and her individual retirement account, the chancellor determined that a payment of the sum of $337,741.82 was necessary to convey Stephanie her one-half share of the marital estate. Timothy was ordered to immediately pay Stephanie $150,000, with the balance to be paid over ninety-six months in equal installments.
¶ 7. The chancellor also awarded Stephanie rehabilitative alimony in the amount of $65,000, payable in ninety-six monthly installments of $677, and her attorneys' fees in the amount of $51,174.60.

STANDARD OF REVIEW
¶ 8. The standard of review employed by this Court in domestic relations cases is well settled. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court was manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. Andrews v. Williams, 723 So.2d 1175, 1177(¶ 7) (Miss.Ct.App.1998) (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997)). However, we will not hesitate to reverse should we find that a chancery court was manifestly wrong, abused its discretion, or applied an erroneous legal standard. Glass v. Glass, 726 So.2d 1281, 1284 (¶ 11) (Miss.Ct.App.1998) (citing Bowers Window & Door Co., Inc. v. Dearman, 549 So.2d 1309 (Miss.1989)).

ANALYSIS

I. Whether the chancellor erred in his application of the Albright factors.
¶ 9. In matters pertaining to child custody, the chancellor must consider the guidelines set forth in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Timothy argues that the chancellor erred in his application of the Albright factors.
¶ 10. The chancellor found that seven Albright factors favored neither parent: the age of the children, the health and sex of the children, which parent has the willingness and capacity to provide primary child care, the physical and mental health of the parents, the age of the parents, the existing emotional ties between the children and their parents, the moral fitness of the parents, and the stability of the employment of each parent. Also, the preference of the children were inapplicable because neither child was above the age of twelve.
¶ 11. The chancellor found that one factor favored Timothy  the home, school, and community record of the children, and the remaining four factors favored Stephanie  continuity of care, parenting skills, employment and responsibilities of that employment, and the stability of the home *950 environment of each parent. Timothy argues that the chancellor erred in finding that those factors favored Stephanie.
¶ 12. Determining custody of children is one of the most difficult decisions that courts must make. In Buchanan v. Buchanan, 587 So.2d 892, 898 (Miss.1991), the supreme court held that:
The law affords no mathematical formula for deciding such cases, and, even when the trial judge sensitively assesses the factors noted in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983) and progeny, the best the judiciary can offer is a good guess. We doubt it would be contrary to these children's best interests if [their parents] were to sit down and talk as the intelligent and mature adults they profess to be and resolve these matters without further civil warfare.
On the other hand, for one reason or another, we know and accept that there are times when people cannot agree, and the reason we have courts is to decide these cases.
¶ 13. Simply looking at the number of Albright factors that the chancellor determined favored neither Stephanie nor Timothy, we can see that the chancellor considered the decision on custody as a close question. The evidence presented at trial discussed both positive and negative characteristics that both parents must work to improve to ensure that they properly raise their children. We recognize that there is room for error in such decisions and allow for a modification of custody under the appropriate circumstances.
¶ 14. Our task as an appellate court is limited. In Lee v. Lee, 798 So.2d 1284, 1288(¶ 14) (Miss.2001), the court held that in child custody cases, the appellate court does not need to re-examine all of the evidence to see if it agrees with the chancellor's ruling; rather, the appellate court's duty is merely to see if the chancellor's ruling is supported by credible evidence. "So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor." Bower v. Bower, 758 So.2d 405, 412 (¶ 33) (Miss.2000). According to this standard, we review the chancellor's findings on the Albright factors that Timothy claims to be error.
¶ 15. Whether one parent, as compared to the other, has provided the continuity of care for the children prior to the separation. The chancellor found that both parents were actively involved in the day-to-day care of the children. However, the chancellor determined that because of Timothy's work schedule and the demands of his self-employment, the ultimate responsibility for the children's care rested primarily with Stephanie. The chancellor found that the testimony of Timothy's mother was credible and corroborated Stephanie's testimony. Timothy's mother testified that Stephanie made the children's doctor's appointments and cared for them when Timothy was often away on non-work related activities. The chancellor found that this factor favored Stephanie.
¶ 16. Timothy claims that the chancellor failed to recognize his parental role in the care of the children. Timothy argues that he was the parent who took the children to school, picked them up from school, and helped them with their homework. He said that he often took the children to events and activities on the weekend, without Stephanie.
¶ 17. Timothy also argues that the chancellor erred in giving any weight and credibility to his mother's testimony. Timothy claims that his mother had no first *951 hand knowledge of the children's day-to-day routine. Even so, she acknowledged that Timothy had attended all of his son's doctor's appointments and often took the children to weekend events. Timothy testified that he and his mother have been estranged for over two years and that her testimony reflects that she believed that she would not get to visit the children if Timothy were to get custody.
¶ 18. A substantial difference between the chancellor's consideration and this appellate court's consideration is that the parties appeared before the chancellor. The chancellor observed the parties and heard the witnesses testify. Thus, the chancellor is in a much better position to determine what is in the best interest of the children than is the appellate court. Mosley v. Mosley, 784 So.2d 901, 905 (¶ 15) (Miss.2001). Unless the evidence demands a finding contrary to the chancellor's decision, the appellate court will not disturb a ruling of custody. Phillips v. Phillips, 555 So.2d 698, 700 (Miss.1989).
¶ 19. From the precedent cited above, we recognize the limited nature of our review. We cannot, and will not, reweigh the evidence or reconsider the credibility of the witnesses. The chancellor is in "a better position then this Court to judge the veracity of witnesses and credibility of evidence." Lee, 798 So.2d at 1291 (¶ 29). Based on our review of the record, this Court finds that the chancellor was more than justified in ruling as he did. Thus, while we may have considered the evidence differently than the chancellor, we find that there was credible evidence to support the chancellor's decision as to which parent had the continuity of care.
¶ 20. Further, Timothy contends that the chancellor erred by considering which parent had the continuity of care prior to the separation rather than after the separation. As such, Timothy claims the chancellor ignored the parties' roles during the two and one-half year separation.
¶ 21. In Jerome v. Stroud, 689 So.2d 755, 757 (Miss.1997), the Mississippi Supreme Court held that the continuity of care, during the time between a separation and divorce trial, should be considered along with the continuity of care prior to the separation, with neither being given greater weight. Timothy asserts that the chancellor gave greater weight to the continuity of care prior to the separation, and given the fact that this was an unusually long separation, there was a considerable amount of time that should have been considered. While Timothy is correct that the chancellor's ruling did not specifically address the continuity of care during the period of separation, there was ample evidence for the chancellor to determine that continuity of care before the separation was a better indicator to determine what was in the best interest of the children. Indeed, there was testimony that Timothy's conduct had changed after the separation. Accordingly, the chancellor is allowed much discretion in considering this factor. We decline to find that the chancellor erred in finding that the continuity of care factor favored Stephanie. Indeed, there was credible evidence to support this finding.
¶ 22. Which parent has the best parenting skills. The chancellor concluded that Timothy acknowledged that Stephanie has handled the bulk of the parenting skills during the marriage. The chancellor further found this to be evidenced by Timothy's declaration that he "sent her home from work to care for the kids." Accordingly, the chancellor found that this factor favored Stephanie.
¶ 23. Timothy asserts that the chancellor erred because his testimony is replete with facts and evidence which reflect that *952 he bore a large share of the day-to-day responsibilities in caring for his children. Timothy also presented photographs which showed the state in which his home was kept and tape recordings of Stephanie screaming and cursing at the children. Timothy further asserts that his statement regarding sending Stephanie home to take care of the children was misconstrued by the chancellor. His full testimony was that after finding out she had an affair with one of his customers and had been telling his employees that he was cheap, he fired her and told her to go home and take care of the children and the house. As discussed above, Timothy's argument goes to the credibility of the witnesses. We decline to set aside the chancellor's conclusion on this factor.
¶ 24. The employment of the parent and the responsibilities of that employment. The chancellor found that because Timothy is self-employed, his job requires more time and responsibility. The chancellor found that while Stephanie's responsibilities may heighten in the post-divorce era, currently she has very limited requirements away from the children. The chancellor used this reasoning to determine that this factor favored Stephanie.
¶ 25. Timothy contends that the chancellor erred in his determination of this factor. While Timothy is self-employed, he testified that he took the children to school every morning, picked them up from school, helped them with their homework, attended all of their extracurricular activities, attended all of their doctor's appointments, and took them to various events and activities on the weekends. Timothy also testified that because he owns his own business he has the flexibility to arrange his schedule so that he can be available whenever the children need him. On the other hand, Timothy argues, the reason Stephanie has so much time available currently is because she is unemployed. Timothy asserts that the chancellor recognized that this may change after the divorce, but did not take into account how employment would affect her available time. Again, Timothy argues that the chancellor erred in assessing the weight and credibility of the testimony. There was credible evidence to support the chancellor's finding; therefore, we will not disturb it.
¶ 26. The stability of the home environment of each parent. The chancellor found that neither parent exhibited a home environment any more stable than the other. There was evidence of shortcomings of both parents that would affect the stability of the home environment of both parents. However, the chancellor found that because Stephanie intended to remain in the marital home, and Timothy acquiesced, this factor favored her. The chancellor also found that this factor favored Stephanie because she continued to reside in the same home with the children throughout the extensive separation.
¶ 27. Timothy asserts that the chancellor erred in his determination of this factor because he failed to recognize that Timothy also lived in the home with the children throughout the separation. Furthermore, Timothy testified that he had not acquiesced to Stephanie remaining in the marital home, rather he thought it was in the best interest of the children that they continue to reside in their home after the divorce with whichever parent was awarded custody.
¶ 28. Timothy is correct that the chancellor erred in his consideration of this factor. The evidence was undisputed that both parents remained in the marital home after the separation and through the date of the chancellor's ruling. There was no evidence of discord or disagreement during *953 the time of separation. Both Timothy and Stephanie testified that the parent who received custody should maintain the marital residence. We find that this factor should have favored neither parent.
¶ 29. As to the chancellor's analysis of all of the Albright factors and his conclusion, Timothy argues that the chancellor gave weight or credibility to the wrong testimony or misconstrued the facts. However, "it is the chancellor's duty, sitting as finder of fact, to assess the evidence and determine what weight and worth to give it." Hinders v. Hinders, 828 So.2d 1235, 1244 (¶ 28) (Miss.Ct.App.2002). Timothy may disagree with the chancellor's opinion, but he fails to cite any authority that would make the chancellor's findings reversible error. While this Court may have given greater weight to different testimony, our responsibility is merely to determine whether there is credible evidence to support the chancellor's decision. If there is, we must affirm it. Bower, 758 So.2d at 412 (¶ 33).
¶ 30. The chancellor adequately stated the factual findings and legal conclusions that he relied upon for finding that the contested factors favored Stephanie. There was credible evidence to support the chancellor's award of custody to Stephanie. Accordingly, we affirm the award of custody of the parties' children to Stephanie.

II. Whether the chancellor erred in his application of the Armstrong factors in awarding alimony.
¶ 31. Timothy next asserts that the chancellor erred in his application of the factors in awarding alimony to Stephanie, pursuant to Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). Under Armstrong, the following factors are to be considered by the chancellor in arriving at findings and entering judgment for alimony: (1) the income and expenses of the parties; (2) the health and earning capacities of the parties; (3) the needs of each party; (4) the obligations and assets of each party; (5) the length of the marriage; (6) the presence or absence of minor children in the home, which may require that one or both of the parties either pay for, or personally provide, child care; (7) the age of the parties; (8) the standard of living of the parties, both during the marriage and at the time of the support determination; (9) the tax consequences of the spousal support order; (10) fault or misconduct; (11) wasteful dissipation of assets by either party; or (12) any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support. Id.
¶ 32. In his written ruling, the chancellor stated:
With respect to the issue of alimony, the court is directed by the factors set forth in Armstrong v. Armstrong, 618 So.2d 1278 (Miss.1993). With reference thereto, the court looks first to the income and expenses of the parties and finds that the income of the husband greatly exceeds the income of the wife and that the husband has a much greater earning capacity than the wife does. While the husband owns and operates his own business with a very substantial income, the wife is unemployed and does not have the income capacity that the husband possesses. However, she does have work skills and experience in the work force outside the business of the husband. Looking further at the factors set forth in Armstrong, the court finds that the wife will have the responsibility to provide and care for the minor children on a daily basis, will have to bear the mortgage payment of the former marital residence and has monthly expenses in excess of $3,000.00. However, she is relatively young at 36, and has no *954 health problems that would inhibit her from full time employment.
Having examined all of the factors in connection with the facts in the case at bar, the court finds that the plaintiff is entitled to an award of alimony in lump sum form, in the total amount of $65,000.00, payable at the sum of $677.00 a month for a period of 96 months, beginning September 1, 2002, with like payment due at the 1st of each and every month thereafter until paid in full. That this sum of $677.00 per month will assist the plaintiff in her expenses incurred to obtain training and/or education to obtain gainful employment, particularly with reference to the home mortgage."
(emphasis added).
¶ 33. The chancellor's opinion clearly reflects that the chancellor considered the Armstrong factors. Timothy argues that, under Cheatham v. Cheatham, 537 So.2d 435 (Miss.1988), the chancellor erred by awarding Stephanie lump sum alimony. Under Cheatham, four factors should be considered in making a determination as to whether or not an award of lump sum alimony is appropriate: (1) substantial contribution to the accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse's business; (2) a long marriage; (3) where the recipient spouse has no separate income or the separate estate is meager by comparison; and (4) without the lump sum award, the receiving spouse would lack any financial security. Id. at 438. The single most important factor, undoubtedly, is the disparity of the separate estates. Id.
¶ 34. Timothy asserts that Stephanie is not entitled to lump sum alimony because they did not have separate estates. At the time of the equitable division of property, everything they owned, including the business, was classified as marital property and divided equally. Therefore, Timothy asserts, each party was on equal footing. In Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994), the court held that only when an equitable division of property, considered along with the separate assets of both parties, leaves a deficit for one party is an alimony award based upon the value of the non-marital assets proper.
¶ 35. Timothy makes a valid argument, and he would be correct if the chancellor had awarded lump sum alimony. The chancellor's ruling says the alimony is payable in lump sum form. However, the reasoning and description of the purpose of the award clearly indicates that the award was not lump sum alimony but rather was rehabilitative alimony.
¶ 36. In Hubbard v. Hubbard, 656 So.2d 124, 130 (Miss.1995), the supreme court explained that rehabilitative alimony "is an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim." Here, the chancellor clearly stated that the alimony award was designed to help Stephanie become self-supporting. The chancellor reasoned that "Mrs. Hammers needed the alimony in order to obtain training and/or education to obtain gainful employment."
¶ 37. While the chancellor's language regarding lump sum alimony was confusing, it was clear that his intent was to award periodic rehabilitative alimony. In Hubbard, the court held that "unless it is clear from the record what sort of award is given we will construe any ambiguity as being periodic and not lump sum." Hubbard, 656 So.2d at 130 (citing Sharplin v. Sharplin, 465 So.2d 1072, 1073 (Miss.1985)). Therefore, this Court finds that the chancellor awarded Stephanie periodic rehabilitative alimony rather than lump sum alimony. As such, the requirements *955 of Cheatham are irrelevant, and the award will stand.

III. Whether the chancellor erred in his failure to make an analysis of the facts using the Ferguson factors for equitable division of marital property.
¶ 38. Timothy asserts that the chancellor failed to perform an analysis, pursuant to Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994), when equitably dividing the marital property of the parties. Timothy relies on Goodson v. Goodson, 816 So.2d 420, 424 (¶ 12) (Miss.Ct.App.2002), for the proposition that the failure by a chancellor to apply the Ferguson factors and make the requisite findings of fact and conclusions of law constitutes reversible error.
¶ 39. Under Ferguson, a chancellor is required to analyze the following factors: (1) substantial contribution to the accumulation of property; (2) the degree to which each spouse has expended, withdrawn, or otherwise disposed of marital assets, and any prior distribution of such assets by agreement, decree, or otherwise; (3) the market value and the emotional value of the assets subject to distribution; (4) the value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse; (5) tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution; (6) the extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties; (7) the needs of the parties for financial security with due regard to the combination of assets, income, and earning capacity; and (8) any other factor which in equity should be considered. Ferguson, 639 So.2d at 928. While the chancellor does not list each factor and analyze them one-by-one, his written opinion clearly reflects that he followed Ferguson in his equitable division of the parties' assets.
¶ 40. The chancellor found:
The total of all marital assets accumulated during the course of the parties' marriage is $796,516.36, and is thereby subject to equitable distribution. Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994). The contributions to the accumulation of the marital assets by the wife appear to this court to be equal to that of the husband. Although it cannot be reasonably argued that the husband was not the major breadwinner, the efforts of the wife in working in the business and contributing as a homemaker and child rearer must be considered. Accordingly, each party is entitled to one-half that total in the amount of $398,258.18.
¶ 41. A failure to explicitly recite each and every Ferguson guideline does not mandate reversal of a chancellor's judgment. Glass v. Glass, 857 So.2d 786, 790(¶ 10) (Miss.Ct.App.2003). However, a chancellor's findings must be specific enough to allow this Court to find that the factors were considered. Id.
¶ 42. Here, the chancellor ordered that each party is entitled to one-half the total amount of assets accumulated during the marriage. The chancellor referenced the Ferguson factors and made specific findings that elucidate his analysis of the relevant factors. Finding that the chancellor did follow Ferguson in his equitable distribution of the parties' assets, and that his analysis is not manifestly wrong, we affirm.

*956 IV. Whether the chancellor erred in excluding the appellant's expert who conducted an appraisal of appellant's business.

¶ 43. Timothy asserts that the chancellor erred in excluding his expert witness for failure to timely disclose under Uniform Chancery Court Rule 1.10, which provides that absent special circumstances no expert witness will be allowed to testify who was not designated as an expert at least sixty days before trial. Timothy claims that special circumstances existed in that he had notified opposing counsel that he was having an appraisal done, and he sent a copy of the appraisal to opposing counsel as soon as it was received.
¶ 44. This litigation was pending for approximately two years prior to trial. Under a scheduling order, both sides were required to complete discovery on or before February 16, 2002. Stephanie's counsel complied with the scheduling order, designated her expert witnesses, and provided the required discovery to Timothy's attorney by the agreed upon date. Disagreeing with Stephanie's expert's opinion, Timothy's attorney advised Stephanie's attorney that he would obtain an expert of his own. However, the record reflects that it was approximately one week before the May 24, 2002 trial date when Timothy actually designated his expert witness.
¶ 45. Timothy argues that it was impossible for him to comply with the sixty day requirement of Uniform Chancery Court Rule 1.10 because he did not realize the need to obtain an appraisal of his business until after he saw the report of Stephanie's expert appraiser. This may well be the case. Nevertheless, it is clear that Timothy knew that Stephanie planned to hire an expert to appraise the business very early on. Stephanie designated her expert witness and submitted his report during the discovery period. Certainly, by February 16, 2002, Timothy knew what the expert would testify to at trial. Rather than ask the court for an extension or for an amended scheduling order, Timothy waited almost ninety days to produce his expert information.
¶ 46. The chancellor found that Stephanie would be prejudiced if Timothy was allowed to bring in an expert witness on such short notice. Timothy had the opportunity to designate his own expert prior to the discovery deadline. Instead, Timothy waited until one week before the trial was scheduled to begin before he decided to designate an expert. At that point, the chancellor found that it would be prejudicial to grant a continuation since the divorce had been pending for over two years.
¶ 47. Trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases. Bowie v. Montfort Jones Mem'l Hosp., 861 So.2d 1037, 1042 (¶ 14) (Miss.2003). Trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril. Id. Had Timothy designated the expert witness thirty days before the trial, it would have been within the chancellor's discretion to allow the evidence. The chancellor was not manifestly wrong in refusing to allow Timothy to designate his expert witness one week prior to trial. The chancellor also did not apply an erroneous legal standard. Accordingly, we affirm.

V. Whether the chancellor erred in allowing the appellee to present proof of attorney's fees after the conclusion of the trial on the matter.
¶ 48. The chancellor imposed a time limitation of two and one-half hours *957 for each party to present his and her case. The chancellor kept time and, upon request, informed the parties of their time remaining. After using her allotted time, Stephanie was allowed additional time to present proof of her attorney's fees. Timothy, however, was not allowed any additional time. Timothy claims that this violated his right to due process under the law.
¶ 49. Two and one-half hours certainly seems to be an extraordinarily short period of time for the court to consider the important issues of custody, division of property and alimony that are necessary to finally adjudicate the dissolution of a fifteen year marriage. Although we do not believe that chancellors should, by rule, limit all litigants to such a short time period to present evidence, we find that this limitation is not reversible error.
¶ 50. In Gray v. Pearson, 797 So.2d 387, 394 (¶¶ 27-29) (Miss.Ct.App.2001), we considered this issue. We held that:
Rule 611 of the Mississippi Rules of Evidence permits judges to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to "(1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time...." Although every litigant has a right to introduce competent evidence supporting his or her case, if there is no evidence offered as to what a litigant would have presented but for the trial court's restriction, "there is no legitimate basis for complaining on appeal about the chancellor's control of evidentiary presentation." Morreale v. Morreale, 646 So.2d 1264, 1270 (Miss.1994). While many litigants would "like to have unlimited time in which to present evidence in support of their positions during litigation, Rule 611 of the Mississippi Rules of Evidence is designed to give trial judges some measure of control over the operation of trials and the smooth flow of the litigation process." Moore v. Moore, 757 So.2d 1043, 1046 (Miss.Ct.App.2000).
Because the appellant in this case made no timely objection to the two hour time limitation nor made a record of the evidence she would have presented without such time limitation, the chancellor's ruling on this issue stands.
Gray, 797 So.2d at 394 (¶¶ 28-29).
¶ 51. Timothy objected to the chancellor's grant of additional time to Stephanie, but at no time did he articulate the prejudice or harm that he would suffer by the court's time limitation. More importantly, Timothy did not move the court for additional time or proffer into the record what evidence he would have presented with additional time.
¶ 52. The record indicates that Timothy testified and called two additional witnesses. While Timothy, as well as many other litigants, would like to have unlimited time in which to present evidence in support of their positions during litigation, Rule 611 of the Mississippi Rules of Evidence is designed to give trial judges some measure of control over the operation of trials and the smooth flow of the litigation process. Id. We can only assume that the learned chancellor's experience indicates that the time limitation is necessary and proper. If Timothy's presentation of evidence or trial strategy was adversely affected, then a record outlining that adverse or prejudicial effect of such limitation should have been made on the record and preserved for this Court's review. Without such an objection and proffer, this Court cannot determine whether the evidence would have been material or relevant or whether its exclusion constituted prejudicial error. See Martin v. Wadlington, *958 337 So.2d 706, 708 (Miss.1976) (proffer of excluded evidence necessary for appellate court to determine relevance and materiality of such evidence or whether its exclusion constituted prejudicial error); Moore v. Moore, 757 So.2d 1043, 1046 (¶ 13) (Miss.Ct.App.2000) (no legitimate basis for appeal "about the chancellor's control of evidentiary presentations" without proffer). Accordingly, we find this issue is without merit.

VI. Whether the chancellor erred in awarding attorney's fees to Stephanie.
¶ 53. Timothy asserts two errors with the award of attorney's fees to Stephanie. First, she was awarded fees for two attorneys. Second, there was no proof of her inability to pay her attorneys. Because we determine the second issue to be error that requires us to reverse and render the award of attorney's fees, we will not address the first issue.
¶ 54. It is well settled that if a party is financially able to pay her attorney, then she is not entitled to an award of attorney's fees. Carpenter v. Carpenter, 519 So.2d 891, 895 (Miss.1988); Cameron v. Cameron, 276 So.2d 449, 450 (Miss.1973); Nichols v. Nichols, 254 So.2d 726, 727 (Miss.1971). In Cheatham v. Cheatham, 537 So.2d 435 (Miss.1988), the court reversed a chancellor's award of attorney's fees due to the wife failing to offer any proof of her inability to pay such fees.
¶ 55. We find no evidence that Stephanie presented proof of her inability to pay her attorney's fees. Furthermore, in light of the equitable division of assets and the alimony ordered by the chancellor, Stephanie indeed had the ability to pay her attorneys. Therefore, we find that the chancellor erred in awarding attorney's fees. We reverse and render the chancellor's award of attorney's fees.
¶ 56. THE JUDGMENT OF THE CHANCERY COURT OF DESOTO COUNTY IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE TO BE SPLIT EQUALLY BY THE PARTIES.
KING, C.J., BRIDGES, P.J., IRVING, MYERS AND CHANDLER, JJ., CONCUR. LEE, J., CONCURS WITH SEPARATE WRITTEN OPINION. SOUTHWICK, P.J., NOT PARTICIPATING.
LEE, J., Concurring:
¶ 57. I concur with the majority. However, I write separately as I have done so on previous occasions regarding my opinion that the chancellor has the authority to award joint legal custody in an irreconcilable differences divorce without having been specifically requested to do so. See Morris v. Morris, 758 So.2d 1020 (Miss.Ct.App.1999) (Lee, J., dissenting); Wolfe v. Wolfe, 766 So.2d 123 (Miss.Ct.App.2000) (Lee, J., concurring in part, dissenting in part).
¶ 58. Our Court has previously maintained that the chancery court is without authority to award either joint legal and/or physical custody in an irreconcilable differences divorce without the application thereof by the parties. See Miss.Code Ann. § 93-5-24(2) (Supp.2003). The majority has in the case sub judice affirmed the chancellor's award of joint legal custody, thus my concurrence. My previous dissents address my reasoning and without unnecessary repetition, I continue to assert the same and direct the reader to Morris and Wolfe for further explanation.