755 So.2d 528 (1999)
Misty Shea Shepard HAMILTON, Appellant,
v.
James Ray HAMILTON, Appellee.
No. 1998-CA-01905-COA.
Court of Appeals of Mississippi.
November 30, 1999.
*529 Barbara Miller Dollarhide, Grady F. Tollison, Jr., Oxford, Attorneys for Appellant.
Ben F. Horan, Horn Lake, Attorney for Appellee.
BEFORE KING, P.J., DIAZ, AND IRVING, JJ.
DIAZ, J., for the Court:
¶ 1. James Ray Hamilton sued for a divorce from Misty Shea Shepard Hamilton on the grounds of adultery. Misty then countersued for divorce on the grounds of habitual, cruel and inhuman treatment of her or, in the alternative, mental abuse and under the statutory grounds of irreconcilable differences. The chancellor granted a divorce to James on the grounds of adultery. The trial judge awarded joint legal and physical custody to James and Misty which stated, inter alia, that James would have the children during the school year and Misty would have them during the summers. Misty filed a motion for reconsideration and/or to alter or amend judgment, or in the alternative for a new trial upon custody of the children only. After hearing additional evidence, the chancellor denied her motion. Misty has appealed the chancellor's findings and decision to award primary custody of the two children to James. We find that the chancellor failed to address each of the Albright factors in making his determination, and therefore, we reverse and remand for the purposes of considering these factors plus any substantial change in circumstances of the parents which arose during the interim.

FACTS
¶ 2. On June 3, 1994, Misty and James were legally married. From this union, they had two sons Forrest Lee Hamilton and Hudson Cole Hamilton. On July 7, 1998, the final divorce decree was filed.
¶ 3. Throughout the marriage, James worked different eight hour shifts. Misty attended community college two days a week. James or Misty cared for their children while the other was at work or in class. If a conflict arose, Debra Nix, a friend of the Hamiltons, kept the children.
¶ 4. At the divorce trial, both James and Misty testified that Misty stayed at home with the children. June Cook, Misty's mother, and Donna Hegwood, James's mother, testified that Misty was a good parent. Additionally, Ms. Nix, Christy Morgan, Christy Melton, and Tobie Runner testified that Misty is a good mother and maintained a clean, well kept home for the children.
¶ 5. After the separation, Misty kept the children in the family home during the day and when James returned home from work, she would spend the night at a friend's house. After a few weeks, James refused to let Misty see or talk with the children. Finally, James allowed Misty to babysit the children while he was busy, and she took them to live with her in Louisiana for nearly a month. After returning with the children to Mississippi, a hearing was held on the matter of temporary custody of the children. Pursuant to the agreement, James and Misty would have custody of the children for alternating weeks until the divorce trial.
¶ 6. Misty admitted that she had an adulterous relationship with Todd Stephan but claimed that it did not begin until after James asked her to move out in September 1997. James and Misty knew Todd from school and church. James accused *530 Todd of giving Misty drugs; however, the only testimony regarding drugs was that Todd had some legal problems stemming from a forged prescription he uttered. After the trial, Misty and Todd married and from this union produced a daughter.
¶ 7. At the end of the trial, the chancellor rendered his opinion from the bench. He stated that before and after the separation James and Misty both tried to use the children to cause as much pain to the other party as possible. The final divorce decree set forth the parameters of the custody agreement including the award of joint custody of both children to James and Misty, with James maintaining physical custody of the children during the entire school year from August until the end of May each year and Misty having the children the months of June and July. Misty had alternating weekends of custody with her children throughout the school year. Weekend, holiday, and special day visitation concerns followed the standard Farese Visitation Schedule.[1]
¶ 8. Misty filed a motion for reconsideration and or to alter or amend judgment or in the alternative for a new trial upon the custody of children only. On November 30, 1998, a hearing was held on Misty's post-trial motion at which time additional evidence was presented. Misty testified that she and Todd married after her divorce from James, that she had a new baby, and was no longer working outside the home. She also testified that Hudson had diaper rash and other ailments after the divorce, and she claimed these were the result of James's deficient parenting skills. Notwithstanding this evidence, the chancellor denied Misty's post-trial motion. Feeling aggrieved, this appeal was taken.

DISCUSSION

WHETHER THE CHANCELLOR ERRED IN HIS DECISION TO AWARD PRIMARY CUSTODY OF THE PARTIES' MINOR CHILDREN TO THE JAMES RAY HAMILTON BY NOT CONSIDERING AND ADDRESSING EACH ALBRIGHT FACTOR
¶ 9. The polestar consideration in a child custody case is the best interest and welfare of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Additionally, the Mississippi Supreme Court outlined the factors to consider in child custody cases:
[age of the child], health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant tot he parent-child relationship.
Id.
¶ 10. A review of the record shows that the chancellor failed to consider each of the Albright factors in both his oral statement and written order. After discussing the age, health and sex of the children, he briefly addressed the factors of continuity of care and parenting skills. While announcing the judgment and determining child support payments, he discussed the employment of the parents and *531 their job responsibilities. Other than these factors, the chancellor focused on morality and stability and did not specifically address the remaining Albright factors. It is for this reason that we reverse and remand for the purposes of addressing each of the Albright factors. The chancellor should also state specifically what day and the time of the day when the custodial period for each child begins and ends for the weekend and holiday visitations which are not addressed by the Farese Visitation schedule. Furthermore, it may be appropriate to consider any substantial change in circumstances of the parents which arose during the interim.
¶ 11. THE JUDGMENT OF THE CALHOUN COUNTY CHANCERY COURT IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLEE.
KING, P.J., BRIDGES, IRVING, LEE AND THOMAS, JJ., CONCUR. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J., BRIDGES, MOORE, AND PAYNE, JJ.
SOUTHWICK, P.J., concurring.
¶ 12. My fundamental disagreement with the majority is that they create what I find to be new and unnecessary law that a chancellor must ritualistically refer to each factor set out in the key Mississippi Supreme Court opinion. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). I find no case law requiring each factor to be mentioned or else reversal is required. Indeed, Albright refers to these factors as "guidelines" that should not cause the chancellor to lose sight of the principal consideration, which is the "best interest of the child." Id.
¶ 13. However, I agree that we should reverse because certain factors significant to this case were not evaluated on the record. Therefore we in turn cannot evaluate the factual conclusions on those. Since our holding until reviewed or otherwise addressed by the supreme court becomes precedent, I believe that we should not declare this new rule of mandatory mention, else reversal.
¶ 14. In most cases some of the factors simply are not relevant. I find no reversal because a chancellor, based on the evidence that we also have available to review, did not state "the following factors do not apply in this case." These preschool age children had no particular "home, school, and community record" to be analyzed, which was one of the omitted factors. The children were not of an age to state a preference, and therefore that factor need not be mentioned as irrelevant. In addition, the last stated factor in Albright is any "other factors relevant" to the determination. Id. That recognizes that each custody determination will be impacted by a variety of considerations, some of which are listed as useful guidelines but none of which are absolutes or necessarily even relevant, except for the overarching factor of the children's best interests.
¶ 15. The chancellor here stated that he considered each factor. I expect that he did, as he seemed fully aware of the case law and its requirements. All of the factors are listed below, and I indicate the chancellor's handling of them.
¶ 16. 1) Age, health and sex of children. The chancellor mentioned that one child was a year old and the other was four. Both were boys, though the chancellor did not specifically say he knew that. I find no error in that. In ruling on the motion for new trial, the chancellor said that he was aware of the complaints that the children suffered diaper rash while with Mr. Hamilton and had contracted a virus when left with a day care center. The chancellor stated that Albright dealt with the tender years doctrine. He did not describe how Albright dealt with it, but it is obvious that the case stated the doctrine still exists and is a factor in saying that a very young child should be with his or her mother. Id. at 1004-1005. One of the *532 defects in his opinion is that the chancellor did not acknowledge that the mother received this preference which is, nonetheless, not a conclusive one.
¶ 17. 2) The parent with continuity of care prior to the separation. The chancellor stated that Mrs. Hamilton had the continuity of care prior to separation, and since separation the parents had shared equally in this.
¶ 18. 3) The parent with better parenting skills and who has the capacity and willingness to provide primary child care. The chancellor stated that on these considerations "the parties seem to be substantially equal." That is certainly sufficient, though Mrs. Hamilton argues that the evidence overwhelmingly indicates that she had the better skills. That is a different issue.
¶ 19. 4) Each parent's employment. This factor was not mentioned. The evidence showed that Mrs. Hamilton was working from 8:00 A.M. until about 4:00 P.M. at the time of trial, but was not employed by the time of the motion for a new trial and stayed at home with a new baby that she had with her second husband. Mr. Hamilton work required him to leave the children with a day care center at 6:45 A.M. and pick them up at 3:30 P.M. This was an important consideration and the weight that the chancellor gave to it should have been stated.
¶ 20. 5) Physical and mental health and age of parents. There was no finding on this issue. There was also no particular testimony about the matter, and if the chancellor had said anything the evidence would have led to a conclusion that both parents were in good mental and physical health.
¶ 21. 6) Emotional ties of parents and children. The chancellor made no finding on this point. There was proof that the children had strong ties to both parents and the parents reciprocated.
¶ 22. 7) Moral fitness. There was much that the chancellor said about this factor and the evidence supports his conclusions concerning it. Whether this factor should have been given the weight that it received can be disputed, but there was no defect in the record regarding its consideration.
¶ 23. 8) The home, school, and community record of children. This factor was neither mentioned nor relevant to these two young children.
¶ 24. 9) Preference of a child legally old enough to state one. This factor also was not mentioned, but neither was it relevant.
¶ 25. 10) Stability of home environment. The chancellor mentioned this factor to the extent of saying that he saw questions regarding Mrs. Hamilton's morality also to reflect on stability. She had moved to another state and established a residence with a man not her husband while she was still married to Mr. Hamilton.
¶ 26. 11) Other relevant factors. No others were mentioned, but I do not read the majority's opinion as necessarily requiring the chancellor to state that he found no other factor.
¶ 27. At the hearing on a motion for new trial, the chancellor further stated that he had "considered the stability of the home. I considered moral fitness. I considered the ability of both of these parents to care for the children. I considered the situation that Mrs. Hamilton was going into. I considered all of the various factors contained in Carr v. Carr [480 So.2d 1120 (Miss.1985) ] and I made a decision based upon all of those factors."
¶ 28. What the chancellor definitely found conclusive was his belief that the children would have a more moral upbringing in Mr. Hamilton's home. He mentioned several times a case after Albright that specifically discussed the impact of adultery of one of the spouses on a custody decision. Carr, 480 So.2d at 1122. The conclusion was that adultery should be considered but only as part of the overall group of factors. Id. at 1123. The chancellor in Carr started with the premise, consistent with prior case law, that the *533 person guilty of adultery was not entitled to custody; then the chancellor "weighed the factors he thought applicable under these facts." Id. The opinion indicates that the chancellor did not consider all Albright factors, but his determination may have been (its date is not stated) prior to Albright. Regardless, the supreme court found a proper analysis by the chancellor that focused on the best interest and welfare of the children.
¶ 29. Much has occurred since Carr. I agree with the majority that Albright has become the controlling authority, so much so that Albright's word "polestar" is a veritable prerequisite for an opinion about child custody in Mississippi. I also agree that there is too little that we can determine from the chancellor's opinion about the consideration that was given to relevant factors on which evidence was introduced. I concur instead of join the majority opinion because I find no requirement of a talismanic recitation of the Albright eleven before a chancellor's decision can be upheld.
McMILLIN, C.J., BRIDGES, MOORE AND PAYNE, JJ., JOIN THIS SEPARATE OPINION.
NOTES
[1] The Farese Visitation Schedule is a model originating from chancery districts in north Mississippi. While the schedule has been referred to Mississippi case law, Mixon v. Mixon, 724 So.2d 956, 960 (Miss.1998); Martin v. Coop, 693 So.2d 912, 915 (Miss.1997), chancellors are vested with the authority to use their discretion in regard to the circumstances of the parties and the nature of the case in fashioning visitation schedules. Miss. Code Ann. § 93-5-23 (Rev.1994).