# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00160-COA

**MICHAEL SULLIVAN**                                                            **APPELLANT**

**v.**

**SHINOBU TANAKA SULLIVAN**                                              **APPELLEE**

DATE OF JUDGMENT:                    11/20/2013
TRIAL JUDGE:                              HON. ROBERT Q. WHITWELL
COURT FROM WHICH APPEALED:    LAFAYETTE COUNTY CHANCERY
                                             COURT
ATTORNEYS FOR APPELLANT:        TIFFANY ALAYNE YATES
                                             JULIA GIVENS WILLIAMS
ATTORNEY FOR APPELLEE:           WALTER ALAN DAVIS
NATURE OF THE CASE:               CIVIL - CUSTODY
TRIAL COURT DISPOSITION:          GRANTED APPELLEE PHYSICAL
                                             CUSTODY OF THE MINOR CHILD
DISPOSITION:                          AFFIRMED: 03/24/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., FAIR AND JAMES, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Michael Sullivan appeals the decision of the Lafayette County Chancery Court awarding Shinobu Sullivan physical custody of their son. Specifically, Michael asserts the following: (1) the chancellor erred in his consideration and application of the *Albright*[1] factors, and (2) the chancellor's custody determination was against the weight of the evidence. Finding no error, we affirm.

---

[1] *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

## FACTS

¶2.     Michael and Shinobu were married on April 15, 2003, in Tokyo, Japan.  They have one child, Aiden, who was born on December 10, 2004.  In Japan, Michael worked in technology and bank regulatory compliance.  Shinobu stayed at home with Aiden as the primary caregiver; she prepared his meals, bathed him, and changed his diapers.  Michael often worked late into the night and went out for drinks afterwards.  Michael also took prescribed medication to cope with insomnia and depression.

¶3.     Michael lost his job in 2009.  As a result, he borrowed more than $118,000 from his mother for living expenses.  Michael returned to the United States in November 2010, and moved to Oxford, Mississippi, to live with his mother.  His new psychiatrist in Memphis, Tennessee, managed his medications.  Shinobu and Aiden arrived to the United States in March 2011 and moved in with Michael and his mother.

¶4.     Nine months later, Michael filed for divorce and requested full custody of Aiden.  Both Michael and Shinobu requested temporary relief.  On April 11, 2012, the court issued a temporary agreed order, which required Michael and Shinobu to share joint legal and physical custody.  Pursuant to Mississippi Code Annotated section 93-5-23 (Rev. 2007), the court appointed a guardian ad litem (GAL) to investigate allegations of abuse.[2]  Two weeks later, the court modified the temporary order based on the GAL's recommendation. Shinobu was awarded temporary physical custody, while Michael had visitation every other weekend.

---

[2] It is unclear from the record which party alleged abuse.

¶5.     In the midst of the proceedings, Michael took Aiden to counselor Dr. Gillian Love. Dr. Love counseled Aiden on his adjustment to the United States and the pending divorce. On May 31, 2012, the court entered an agreed order, providing a 2012 summer custody visitation schedule. The court also ordered Aiden to continue seeing Dr. Love at least once a week. Five weeks later, the court ordered that Dr. Love remain Aiden's counselor and communicate openly with the GAL. The court specified that Dr. Love would not testify at any future hearing.

¶6.     At the time Michael filed for divorce, Shinobu was unemployed and knew few people. She moved out of Michael's mother's home and worked various jobs, from Japanese teacher to hotel housekeeper. Eventually, Shinobu's new income allowed her to procure her own apartment and provide for Aiden. She and Aiden attended church with their neighbors.

¶7.     Both Michael and Shinobu testified at the divorce hearing. Michael testified that Shinobu had a tendency to get angry. He said she hit him a couple of times and hit Aiden. Shinobu admitted hitting Aiden once in the head while he was hitting her. She said she was trying to block him.

¶8.     Michael hired Dr. Bradley Freeman in preparation for the hearing. Dr. Freeman testified that he interviewed some of Michael's and Shinobu's neighbors and family members. He also interviewed Dr. Love and the GAL. Also, Dr. Freeman tested and evaluated Michael, Aiden, and Shinobu. Dr. Freeman stated that Michael was not experiencing symptoms of psychopathy, but did show signs of past alcohol abuse. In regard

3

to Aiden, Dr. Freeman testified that he suffered from anxiety and struggled with the strained relationship between his parents. Shinobu's test results showed that she could possibly have trouble handling Aiden's emotional needs.

¶9. Dr. Freeman's report stated that Aiden should remain in Shinobu's physical custody. But Dr. Freeman's opinion changed during his testimony. He stated that, after hearing Michael's and Shinobu's testimonies, he thought Aiden should be placed with Michael. Dr. Freeman referenced his report, in which he noted that Dr. Love found Shinobu difficult to deal with during Aiden's counseling sessions.

¶10. The GAL testified that Aiden needed both parents in his life. There were no findings of abuse. She recommended that the parents either alternate weeks with Aiden, or share joint legal custody, with one parent maintaining physical custody. She specified that alternating weeks would be the preferred method. When questioned further, she stated that she would be satisfied with a Farese-type schedule,[3] as long as the other parent had liberal visitation and the court provided a specific schedule.

¶11. The chancellor went through each factor set forth in *Albright v. Albright*, 437 So. 2d

---

[3] As stated in *Hamilton v. Hamilton*, 755 So. 2d 528, 530 n.1 (Miss. Ct. App. 1999):

The Farese Visitation Schedule is a model originating from chancery districts in north Mississippi. While the schedule has been referred to Mississippi case law, chancellors are vested with the authority to use their discretion in regard to the circumstances of the parties and the nature of the case in fashioning visitation schedules.

(Internal citations omitted).

1003, 1005 (Miss. 1983). After weighing the *Albright* factors, the chancellor awarded Michael and Shinobu joint legal custody and Shinobu physical custody. The court gave Michael liberal visitation rights and ordered him to pay monthly child support of $350. The court also ordered Michael and Shinobu to cooperate with Dr. Love as she continued to counsel Aiden. Additionally, the court ordered Shinobu to complete parenting classes and individual counseling. The court scheduled a hearing six months later to check the status of Aiden's counseling and to hear the GAL's updates on the custody arrangement.

¶12. The court held the hearing on November 20, 2013.[4] Shinobu had successfully completed her parenting classes and counseling. The GAL testified that the custody arrangement should remain in place. The court accepted the GAL's recommendation. Additional facts will be discussed in the analysis, as necessary.

## STANDARD OF REVIEW

¶13. "The standard of review in domestic-relations cases is limited." *Arrington v. Arrington*, 80 So. 3d 160, 164 (¶11) (Miss. Ct. App. 2012) (citing *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 512 (¶8) (Miss. 2010)). We will not disturb a chancellor's findings unless the findings were manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard. *Phillips v. Phillips*, 45 So. 3d 684, 692 (¶23) (Miss. Ct. App. 2010).

---

[4] After the first divorce decree was issued, Judge Edwin Roberts Jr. passed away. Judge Robert Q. Whitwell was appointed to preside over all subsequent matters in the present case.

¶14. In appeals from child-custody decisions, our polestar consideration, like the chancellor's, must be the best interest of the child. *Montgomery v. Montgomery*, 20 So. 3d 39, 42 (¶9) (Miss. Ct. App. 2009) (quoting *Hensarling v. Hensarling*, 824 So. 2d 583, 587 (¶8) (Miss. 2002)). "So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor." *Hammers v. Hammers*, 890 So. 2d 944, 950 (¶14) (Miss. Ct. App. 2004) (quoting *Bower v. Bower*, 758 So. 2d 405, 412 (¶33) (Miss. 2000)).

## ANALYSIS

### 1. *Albright* Factors

¶15. The *Albright* factors are as follows: (1) age, health, and sex of the child; (2) continuity of care prior to the separation; (3) parenting skills and the willingness and capacity to provide primary child care; (4) the employment of the parent and responsibilities of that employment; (5) the physical and mental health and age of the parents; (6) the emotional ties of parent and child; (7) the moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) the stability of the home environment and employment of each parent; and (11) other factors relevant to the parent-child relationship. *Albright*, 437 So. 2d at 1005.

¶16. The chancellor found the following factors favored Shinobu: continuity of care; parenting skills; willingness and capacity to provide the primary child care; physical and

mental health of the parents; the home, school, and community record of the child; and stability of the home environment and employment of each parent. The chancellor found that the remaining factors did not favor either party. In regard to other factors relevant to the parent-child relationship, the chancellor noted that Shinobu's Japanese citizenship heightened the risk of abduction. The chancellor stressed, however, that the risk was based merely on the facts presented – not on Shinobu's actions. The chancellor commended Shinobu's ability to overcome the negative presumption through her efforts. The chancellor ultimately found that the best interest of Aiden would be served by granting physical custody to Shinobu.

¶17. Michael asserts chancellor erred in finding several factors in Shinobu's favor. Michael additionally claims that some factors found to be neutral weighed in his favor. An *Albright* analysis is not a mathematical equation. *Lee v. Lee*, 798 So. 2d 1284, 1288 (¶15) (Miss. 2001). And the factors are not meant to be weighed equally in every case. *Divers v. Divers*, 856 So. 2d 370, 376 (¶27) (Miss. Ct. App. 2003). Our supreme court has held that "[a]ll the [*Albright*] factors are important, but the chancellor has the ultimate discretion to weigh the evidence the way he sees fit." *Johnson v. Gray*, 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003).

¶18. "In order to determine whether or not the chancellor was manifestly wrong [or] clearly erroneous[,] or abused his discretion in applying the *Albright* factors, we review the evidence and testimony presented at trial . . . to ensure his ruling was supported by the record." *Hollon v. Hollon*, 784 So. 2d 943, 947 (¶13) (Miss. 2001). Below, we discuss the factors Michael

contests on appeal.

### a. Age, Health, and Sex of the Child

¶19.　Aiden was eight years old and in generally good health at the time of the hearing.  The chancellor found this factor favored neither party.  We find that the chancellor was within his discretion to do so.

### b. Parenting Skills

¶20.　The chancellor stated that both parents had good parenting skills, with this factor slightly favoring Shinobu.  He based his finding on the fact that Shinobu was the general provider, preparing all of Aiden's meals and sending him to school.  Michael claims the chancellor ignored the fact that Shinobu admitted she hit Aiden.  At the hearing, Shinobu explained to the chancellor that she hit Aiden once, when he hit her and she tried to block him.  Further, there was no other evidence presented that Shinobu abused Aiden.  The chancellor was within his discretion to accept Shinobu's testimony as credible.

### c. Willingness and Capacity to Care for the Child

¶21.　The chancellor found this factor favored Shinobu.  He reasoned that Michael was still unemployed and indebted to his mother, while Shinobu had obtained good employment.  The chancellor also based his finding on Shinobu's endeavors to involve Aiden in sports, piano lessons, and swimming lessons.  Michael claims that the chancellor erred in basing his decision on Michael's unemployment and reliance on his mother for financial support, since Shinobu also relied on Michael's mother prior to their separation.  As the chancellor correctly

noted, Shinobu was no longer financially dependent on Michael's mother. The chancellor was within his discretion to find this factor favored Shinobu.

### d. Physical and Mental Health and Age of the Parents

¶22. The chancellor found this factor slightly favored Shinobu, given Michael's history of depression and alcohol abuse. Michael claims that the chancellor ignored testimony regarding Shinobu's temper and emotional issues. The record shows that Michael saw two different psychiatrists for insomnia and depression. In addition, Dr. Freeman testified that Michael showed signs of past alcohol abuse. We find substantial evidence in the record to support the chancellor's finding.

### e. Moral Fitness of the Parents

¶23. The chancellor found this factor favored neither party. Michael claims the chancellor ignored his testimony about Shinobu's forged financial documents and his claim that Shinobu visited sexually explicit websites. Shinobu denied these allegations. The chancellor was within his discretion to find Shinobu's testimony more credible than Michael's testimony.

### f. Home, School, and Community Record of the Child

¶24. The chancellor found this factor favored Shinobu. He based his finding on testimony showing that Aiden was an exemplary student, primarily due to Shinobu's care. Michael claims the chancellor failed to consider Michael's extended family in the area. The record shows that Shinobu was primarily responsible for Aiden's schooling and extracurricular involvement. We find substantial evidence in the record to support the chancellor's decision.

9

### g. Other Relevant Factors

¶25.    The chancellor stated Shinobu's Japanese citizenship created a risk of abduction.  But the chancellor ultimately determined that Shinobu's actions negated that risk.  Michael argues that the chancellor erred in ignoring other relevant factors, namely Shinobu's lack of cooperation with Dr. Love.  The court addressed this issue in the divorce decree, ordering both parents to cooperate with Dr. Love in the future.  We cannot say the chancellor abused his discretion in doing so.

### 2.  Weight of the Evidence

¶26.    Michael claims the chancellor's judgment was contrary to the weight of the evidence. He specifically refers to the GAL's recommendation that he and Shinobu alternate weeks with Aiden.  The chancellor was required to appoint a GAL based on allegations of abuse and neglect.  *See* Miss. Code Ann. § 93-5-23.  As a result, the chancellor was also required to provide a summary of the GAL's recommendation.  *S.N.C. v. J.R.D.*, 755 So. 2d 1077, 1082 (¶18) (Miss. 2000).  "[W]hen a chancellor's ruling is contrary to the recommendation of a statutorily required guardian ad litem, the reasons for not adopting the guardian ad litem's recommendation shall be stated by the court in the findings of fact and conclusions of law."  *Id*.

¶27.    Here, the chancellor recognized that the GAL's preferred method was to alternate weeks between Michael and Shinobu.  The chancellor instead chose the GAL's alternative option of liberal visitation, explaining that the circumstances presented made alternating

weeks too difficult. We find no error in the chancellor's ruling.

¶28. Michael also contends that the chancellor disregarded Dr. Freeman's testimony that Michael should have physical custody of Aiden. The chancellor was "best equipped to listen to witnesses, observe their demeanor, and determine the credibility of the witnesses and what weight ought to be ascribed to the evidence given by those witnesses." *Rogers v. Morin*, 791 So. 2d 815, 826 (¶39) (Miss. 2001) (quoting *Carter v. Carter*, 735 So. 2d 1109, 1114 (¶19) (Miss. Ct. App. 1999)). This Court cannot reweigh the evidence but instead must defer to the chancellor's findings of facts so long as they are supported by substantial evidence. *Carter*, 735 So. 2d at 1114 (¶18). After careful review of the record, we find there is substantial evidence to support the chancellor's decision awarding Shinobu physical custody.

¶29. **THE JUDGMENT OF THE LAFAYETTE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL AND JAMES, JJ., CONCUR. ROBERTS, J., NOT PARTICIPATING.**